Argued and submitted December 18, 1987, reversed and remanded for further proceedings September 14, reconsideration denied December 2, petition for review denied December 20, 1988 (307 Or 246)

# STATE OF OREGON,
*Appellant,*

*v.*

# STANLEY MARVIN BERNSON,
*Respondent.*

## (CF 86-31; CA A41651)

760 P2d 1362

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

Warden, P. J., concurring in part and dissenting in part.

---

* Joseph, Chief Judge, *vice* Young, J., deceased.

## VAN HOOMISSEN, J.

Defendant is charged with murder. ORS 163.115. The state appeals from a pretrial order excluding other crimes evidence which it wants to offer at trial to prove identity and to impeach defendant in the event that he testifies. The trial court excluded the evidence under OEC 403 for reasons of "unfair prejudice and undue delay in the proceedings." We reverse and remand.

On December 23, 1978, Yvonne Weber was reported missing. In 1985, her remains were found in a rural area near the Cold Springs Reservoir in Umatilla County. They showed possible trauma and contained a .22 caliber bullet. Defendant subsequently was charged in this case with her murder.

The state wants to use witness testimony and defendant's confession[1] to establish these facts: Defendant became acquainted with Weber after he met her in a Umatilla restaurant, which was on his produce sales route. He told Weber's friend that he found her attractive. A few days before Weber disappeared, she told her mother that a man had offered her a job which paid a good salary and included new clothes and a business car. On December 22, 1978, Weber appeared to be waiting for someone in a Umatilla grocery store. She left the store, walking in the direction of the restaurant, and was not seen again. Defendant's travel logbook indicated that he had been on another portion of his route, away from Umatilla, on December 22.

The excluded evidence pertains to the murder of another woman and an assault on still another. The state offered testimony that defendant met Diann Remington in December, 1978, that he had often remarked to others that she was pretty, that he had offered her a job which would pay about $20,000 per year, selling women's clothing and jewelry, and that, when her mother returned home from work on the evening of January 4, 1979, she found a note from Remington stating that she would be home later. Remington did not return. On January 26, 1979, her body was discovered in the Horse Heaven Hills area of Benton County, Washington. Her

---

[1] The state's narrative offer of proof relied in significant part on defendant's confession to Weber's murder. Defendant has withdrawn his cross-appeal from the trial court's ruling admitting the confession.

death had been caused by multiple stab wounds to the chest. Although defendant presented an alibi defense based on his travel logbook, he was convicted of Remington's murder.

The state also offered testimony that in January, 1979, defendant met Dina Galassini in a Hermiston restaurant, which was on his route. He told her about a job with a woman's clothing company which would pay $2,000 monthly and included a company car. On January 26, 1979, he set up an evening meeting with Galassini but told her not to tell anyone about the job or about meeting him. That evening, he drove her toward the Horse Heaven Hills in Washington. She protested and told him that she did not want to go there and that she would have to talk to her boyfriend before accepting the job. He became angry, brandished a knife and told her to undress. He then assaulted her with a knife, cutting her breast. He then allowed her to dress and drove her to the area where Remington's body later was found. He again assaulted her, cutting her wrist. She managed to lock him out of the truck and drove back to Hermiston. At his trial for assaulting Galassini, defendant presented an alibi defense claiming that he had been elsewhere on his route at the time of the assault. He was convicted.

The admissibility of the proffered evidence is governed by OEC 404(3):

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

That is a rule of inclusion that permits the admission of other crimes evidence when it is not offered "solely to prove (1) the character of a person, and (2) that the person acted in conformity therewith." *State v. Johns,* 301 Or 535, 548, 725 P2d 312 (1986); *see State v. Harvey,* 82 Or App 595, 597, 728 P2d 940 (1986).

To be admissible under OEC 404(3), evidence must

be relevant to an issue at trial, other than character or criminal propensity.[2] Further, its probative value must outweigh the danger of unfair prejudice.[3] *State v. Johns, supra,* 301 Or at 549-50. In balancing probative value against the danger of unfair prejudice, a trial court must consider (1) the state's need for the evidence, (2) the certainty that the other crime was committed and that defendant was the perpetrator, (3) the strength or weakness of the evidence; (4) its possible inflammatory effect on the jury; and (5) how time consuming and distracting proof of the other crimes will be. *State v. Johns, supra,* 301 Or at 557-58; *State v. Collins,* 73 Or App 216, 220, 698 P2d 969 (1985). In considering those factors, the court exercises its discretion in ruling on the admissibility of the evidence. *State v. Johns, supra,* 301 Or at 559.

██ In this case, the state wants to offer the evidence to prove the identity[4] of Weber's murderer. Other crimes evidence offered to prove identity must show such a similarity, either in the particular manner or the novel means by which the acts were done, as to constitute the distinctive "signature" of the perpetrator. *See State v. Manrique,* 271 Or 201, 207, 531 P2d 239 (1975); *State v. Zimmerlee,* 261 Or 49, 52-53, 492 P2d

---

[2] In *State v. Johns, supra,* 301 Or at 555, the Supreme Court explained:

"These decisions must be made case-by-case, with the trial judge first determining whether the evidence has any probative value under OEC 401 as applied to [an issue other than character] under OEC 404(b), then deciding whether the evidence has any prejudicial effect outweighing its probativity under OEC 403." (Footnote omitted.)

OEC 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

[3] In *State v. Johns, supra,* 301 Or at 549-550, the Supreme Court commented:

"Even if the evidence is relevant for some purpose other than proving a propensity to commit certain acts, the trial judge's task is not completed. The judge still must decide whether to admit the evidence and must articulate reasons for that decision on the record. In other words, in deciding issues under OEC 404(3) the trial court must apply OEC 403, * * *"

OEC 403 states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence."

[4] The state's contention during oral argument in this court that the evidence was also offered to prove motive, intent and preparation is not supported by the record.

795 (1972). The trial court's determination of the relevancy of the proffered evidence was a legal conclusion which we review for substantial error.[5]

The trial court found too few significant similarities between the prior crimes evidence and the instant case to establish that the evidence is relevant to prove identity. The court noted that, in all three cases, defendant was acquainted with the victim, that the crimes took place in rural areas and that defendant asserted an alibi defense. However, it found that those circumstances were not unusual in murder and sexual assault cases. The court also noted that the use of the knives in each case was different.[6] The court held that the proffered evidence was not relevant to prove identity and, therefore, it did not meet the first test of admissibility.

We agree with the trial court that several of the similar facts relied on by the state are not in themselves uncommon in murder and sexual assault cases. That reduces, but does not eliminate, the weight to be accorded those factors. Yet, a "signature" crime need not be composed solely of unique or novel elements to identify its perpetrator. Just as distinctive signatures may include elements that are not unusual in themselves, a *modus operandi* or "signature" may

---

[5] An appellate court is not bound by a trial court's conclusions of law. *See State v. Warner*, 284 Or 147, 158-159, 585 P2d 681 (1978). The trial court made its rulings on the same record available to this court and was in no better position than we are to determine the relevance of the evidence offered by the state. We also note that the ruling was not made in the context of a trial, in which a trial court's assessments of need and the potential for unfair prejudice would be better informed than ours and, thus, entitled to greater deference. We addressed this issue in *State v. Browder*, 69 Or App 564, 567, 687 P2d 168 (1984):

"A pre-trial ruling on the admissibility of evidence is necessarily more difficult for the trial court, because it lacks a full context on which to base its decision. Although the parties often make elaborate offers of proof, sometimes to the point of essentially presenting their whole case, that remains, in many cases, an awkward and inefficient way to create a context to enable a trial judge to rule on the matter. In most cases, only proffered evidence which carries an *unusual* potential for prejudice should be ruled on before trial. Preferably evidence should be presented and ruled on in the normal course of the trial rather than within the permissive ambit of an omnibus hearing under ORS 135.037(3)." (Emphasis in the original.)

[6] In view of Gallasini's resistance and her escape from defendant, the trial court appears to have placed undue emphasis on the location of the victims' wounds as a dissimilar factor. Galassini received cuts on her breast and wrist rather than stab wounds in the chest, as did Remington and Weber. Accordingly, we accord the location of the wounds less weight than the fact that a knife was used in all three crimes.

also include elements which individually have small weight but, in the aggregate, point to a single perpetrator.

■     We find that the rural locations, defendant's having made a point of making acquaintances with the victims, his defenses of alibi, the use of knives and numerous other factors cited by the state,[7] although, perhaps, not uncommon, weigh strongly in favor of the perpetrator being the same person in each instance. When buttressed by the fact that each of the victims had received a similar, unusual offer for an attractive, nonexistent job, the aggregated factors are strong, as well as relevant, evidence that all three crimes had been committed under the same unique circumstances and that the same person who had murdered Remington and who had assaulted Galassini also murdered Weber. The dissimilarities in the three crimes are not sufficient to defeat the relevance of the other crimes as evidence of identity.[8] We conclude that the trial court erred in ruling that the evidence was not relevant to prove identity.

■     Notwithstanding its ruling that the evidence lacked relevance to prove identity, the trial court proceeded to consider whether the probative value of the proffered evidence outweighed any danger of unfair prejudice. *State v. Johns, supra.* Trial courts are entitled to deference in the balancing of the probative value of relevant evidence against its potential for unfair prejudice. In this case, however, the trial court's initial finding of lack of relevance suggests that it found the evidence to have little weight. The court recognized the state's need for the proffered evidence and found that the certainty

---

[7] The state's evidence also noted the similarities in the marital status and appearance of the three victims (race, body build, hairstyle and facial features); that defendant's acquaintance with each victim had been initially related to defendant's job; that he had made remarks as to the attractiveness of all three victims and his sexual desire for them; that defendant had arranged appointments with the victims to discuss his job offers; that in both the Galassini assault and the Weber murder he used his company vehicle; that he had sexual relations or attempted to with each victim; that in each case the victim was attacked or murdered after a sexual or attempted sexual encounter; that defendant buried both murder victims in shallow graves; that he later returned to the scene of both murders; that defendant made continued references to both murder victims after their disappearances; and, in all three cases, defendant attempted to establish that he was elsewhere on his sales route on the dates of the crimes (in both murder cases he prepared false log entries to establish an alibi).

[8] As argued by the state, differences in the Galassini assault can be accounted for by her resistance and escape from defendant.

that the other crimes had been committed by defendant had been established by his convictions. However, the court then held that the prejudicial effect of the evidence far outweighed its relevance and probative value, thus necessitating its exclusion.

■ Given the certainty that defendant committed the other crimes and their many significant similarities to the crime charged here, the proffered evidence cannot fairly be characterized as weak. Rather, we conclude that it is so strong that it can be outweighed only by a persuasive showing of such *unfair* prejudice to defendant as substantially to outweigh its probative value.[9] That is a determination to be made in the first instance by the trial court. OEC 403; *State v. Johns, supra.* Accordingly, we reverse and remand to the trial court with instructions to reconsider its order in the light of our conclusion that the state's other crimes evidence is both relevant and highly probative.

The state also argues that the trial court erred in holding that defendant's convictions were inadmissible under OEC 609(1) as potential impeachment evidence. The rule has been amended since the trial court's order, *see State v. Dick,* 91 Or App 294, 754 P2d 628 (1988), and the amended rule will be in effect on remand. *State v. Tucker,* 90 Or App 506, 753 P2d 427 (1988); *see State v. Carr,* 91 Or App 673, 756 P2d 1263 (1988). On remand that issue will be reconsidered under the new rule.

Reversed and remanded for further proceedings not inconsistent with this opinion.

**WARDEN, P. J.,** concurring in part; dissenting in part.

I concur with the majority that the issue of the admissibility of defendant's prior convictions for impeachment purposes must be decided under the amended rule. However, because I would hold that the trial court did not err in suppressing the prior crime evidence, I respectfully dissent.

---

[9] Although the trial court included "undue delay" as a ground for exclusion, nothing in the record explains the court's conclusion. Trial courts must make findings on the record to support their conclusions and rulings. The findings are necessary to permit this court to review the exercise of discretion. *See State v. Lutz,* 306 Or 499, 760 P2d 249 (1988).

The state contends, and the majority holds, that the evidence of the assault on Galassini and the murder of Remington is admissible under OEC 404(3) to prove defendant's identity.[1] Under OEC 404(3), other crimes evidence is inadmissible if it is offered solely to prove that a defendant has a bad character and acted in conformity with that character. *State v. Johns,* 301 Or 535, 548, 725 P2d 312 (1986). Evidence of other crimes offered to prove the identity of a defendant is "strictly limited to crimes committed 'by the use of a novel means or in a particular manner' so as to earmark the acts as the handiwork of the accused." *State v. Johns, supra,* 301 Or at 551; *see State v. Manrique,* 271 Or 201, 207, 531 P2d 239 (1975). Proof of "a novel means" or "a particular manner" of committing the crimes is a rigid requirement when admitting prior crimes to prove identity. *State v. Johns, supra,* 301 Or at 551. Whether evidence is admissible under OEC 404(3) to prove an issue other than character or criminal propensity is a legal conclusion as to its relevance, which we review for adverse discretion. *See State v. Johns, supra,* 301 Or at 559.

After a pretrial hearing, the trial court made these oral findings:

"The motion in limine, as I indicated, is allowed as to prior crimes. The criteria the Court must follow is set forth in *State v. [Hockings,* 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978)] and *State v. Collins[, supra].*[2]

"First, the need for the evidence in this case. There is an apparent need because the case against [defendant] is circumstantial.

"The second factor is the certainty of the commission of the crime by [d]efendant. I'm referring to the Remington and Gallasini incidents. He was convicted so there is certainty there.

"The third factor has to do with the evidence, its strength and weakness, and fourth, its prejudicial effect.

---

[1] I agree with the majority that the record does not support the state's contention that the evidence was also offered to prove defendant's motive, intent and preparation. We need not consider those grounds.

[2] In *State v. Johns, supra,* 301 Or at 557-58, the Supreme Court expressly approved the factors set forth in *Collins. Johns* was decided on August 26, 1986, and the trial court's oral decision was rendered on September 10, ten days before *Johns* appeared in the Advance Sheets.

"What we have here is an offer of proof and the Court is left to speculate, first, whether some of that evidence is admissible and second, whether the witnesses would testify as represented by the District Attorney.[3]

"I find there [are] inferences upon inferences as was argued by [defense counsel]. One example being the alleged similarity that the victims were not to tell [about their job interviews with defendant]. The note left by Diann Remington, 'I'll be back —' to me is nothing more than inference that she was told not to tell.

"The fact that the victims were taken to remote areas is not unusual in sexual situations. People don't usually conduct those activities in public.

"Alibi is another [example]. It's not an issue in this case and indeed it is not an unusual thing for the accused to claim to have been somewhere else at the time, nor do I find the fact that [defendant] was perhaps acquainted with these ladies of any significance.

"Statistically we are informed that most victims of sexual assault are acquainted with their assailant and finally as a further example, the cause of death was an assault which I notice varies in each case.

"If we take [defendant's] statement as true regarding Weber [the victim in this case], he hit her over the head with a two-by-four and then stabbed her in the chest, I believe with a knife. A bullet hole was found.

"Assuming for the sake of argument he did it, that shows a bludgeoning with a knife and bullet.

"In Remington, only a knife was used and there the stabbing was in the back. A dissimilarity with Weber.

"And in Gallasini, although a knife was displayed, it was apparently not used in any similar fashion as in the other two cases.

"So it's my conclusion, although there are some similarities, there are an equal number of, if not more, dissimilarities and that those similarities are not so unique as to constitute his signature on the crimes.

"And in any event, I feel that their admission into evidence is outweighed by the prejudice and will be excluded

<hr />

[3] The offer of proof made by the state consisted only of a lengthy narrative statement. I agree with the trial court that we are left to speculate as to the admissibility of some of the evidence contained in the offer.

under [OEC] 403 due to unfair prejudice and undue delay in the proceedings."

The majority devotes only four sentences to discussing the sufficiency of the evidence to invoke defendant's signature on the crimes, listing as "substantial similarities" the fact that the three victims were from the same general area, were acquainted with defendant and were enticed by similar job offers. 93 Or App at 120. I agree that the job offers are substantially similar. In my view, however, that similarity, even coupled with the other two similarities noted by the majority, is not sufficient to imprint defendant's signature on the crimes.

Assuming that the state could present admissible evidence to establish the similarities, *see* n 3, *supra,* they do not provide sufficient proof of "a novel means" or "a particular manner" of committing the crimes to render the prior crime evidence admissible. In its offer of proof, the state relied on several alleged points of similarity between the Galassini and Remington crimes and the Weber crime. First, the crimes were committed within a two-month period in 1978-79. That does little to put defendant's signature on the Weber murder. Second, the three women were single and white with similar facial and physical features. Third, defendant met and became acquainted with all three women through his job. Fourth, he found all three women attractive. Those facts cannot be characterized as unique features of these crimes. Fifth, the women were not to tell anyone about their job offers with defendant. The trial court observed that that inference cannot be drawn in the Remington case, and the state's offer of proof did not allege that Weber was instructed by defendant not to tell anyone. Sixth, the crimes allegedly occurred in remote, rural areas. That similarity is again not so unique as to put defendant's signature on the crimes. Seventh, defendant used a work-related alibi in the Galassini and Remington cases. That has no significance, because defendant did not file an alibi defense in this case. Eighth, Remington and Weber were buried in shallow graves. That similarity is again not a feature that is unique to these crimes. Ninth, defendant asked about Remington's and Weber's whereabouts after each had disappeared. That similarity does nothing to point to defendant as the perpetrator of the crimes. The state points out that defendant was acquainted with the women. It therefore would not

be unusual that he would inquire as to their whereabouts after they had disappeared. Tenth, defendant later visited the crime scenes. That similarity, at best, permits a weak inference that defendant was familiar with the crimes, but again it does not make the crimes unique. Eleventh, defendant attempted to or did have sexual relations with the victims before assaulting or killing them. Defendant sexually assaulted Galassini. The state's offer of proof does not clearly state whether defendant's alleged sexual relations with Remington and Weber were consensual, and we therefore must speculate whether that evidence has any probative value as to identity. In sum, the similarities are not so unique, considered either individually or together, as to earmark the Weber crime as the handiwork of defendant.

Furthermore, there are distinguishing dissimilarities between the crimes that weigh heavily against categorizing them as signature crimes. First, the manner in which each victim was assaulted was different. Weber allegedly was hit by a two-by-four, stabbed in the chest and shot.[4] Remington was stabbed in the back. Galassini was assaulted with a knife in a manner completely dissimilar to Weber and Remington, suffering a cut on her hand and breast during a sexual assault. Additionally, Remington's body was found in Benton County, Washington, and the Galassini assault also occurred there. Weber's remains were found in Umatilla County, Oregon.

For the reasons stated, the state has not demonstrated sufficient similarity between the prior crimes and Weber's murder to require admission of the prior crime evidence under OEC 404(3). Accordingly, I would hold that the trial court did not err in excluding the evidence and would affirm. If the majority agreed with me, it would not have to consider OEC 403 and the issue of whether the probative value of the evidence exceeds its prejudicial nature. However, were it necessary to reach that issue, I again would disagree with the majority's resolution of it. I therefore address it here.

Under OEC 404(3), evidence that is relevant for some

---

[4] The only evidence concerning Weber's death apparently comes from a confession made by defendant. A forensic anthropologist, after examining Weber's remains, apparently concluded that a definite cause of death could not be determined.

purpose other than to prove a defendant's propensity to commit certain crimes may nonetheless be excluded under OEC 403 if the danger of unfair prejudice outweighs its probative value. *State v. Johns, supra,* 301 Or at 549-50. Whether evidence is admissible under OEC 403 is a matter for the trial court's discretion. *State v. Johns, supra,* 301 Or at 558-59.

The majority concedes, as it must, that the trial court considered the factors set forth in *Johns, see* n 2, *supra,* and discussed them at length on the record. Having considered those factors, the trial court exercised its discretion under OEC 403 and excluded the prior crime evidence. The majority's discussion of this issue also is limited to only a few sentences. It holds that the trial court abused its discretion in excluding the evidence, because, "[g]iven the certainty that defendant committed the other crimes and their many significant similarities to the crime charged here, the proffered evidence cannot fairly be characterized as weak." 93 Or App at 122. The majority thus relies on the similarities, again without any great detail as to what they are, between the prior crimes and the charged crime; but, as I have demonstrated at some length, the similarities presented by the state are not logically relevant to show that Weber's murder is imprinted with defendant's signature. The weakness of the prior crime evidence therefore weighs heavily against its admissibility, despite the state's alleged need for the evidence and the certainty that defendant committed the prior crimes. Because the prior crime evidence has little, if any, probative value, the very nature of the evidence would make its admission unduly prejudicial. I would hold that the trial court did not abuse its discretion in excluding the evidence under OEC 403.