Argued and submitted July 27, 1990, reversed and remanded March 6, reconsideration denied May 15, petition for review denied June 20, 1991 (311 Or 433)

# STATE OF OREGON,
*Appellant,*

*v.*

# STANLEY MARVIN BERNSON,
*Respondent.*

(CF-86-31; CA A61856)

807 P2d 309

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Richardson, Presiding Judge, and Warren and Deits, Judges.

DEITS, J.

Richardson, P. J., dissenting.

## DEITS, J.

The state appeals, pursuant to ORS 138.060(1), the dismissal of a murder indictment for violation of the time limitations of ORS 135.775,[1] the Interstate Agreement on Detainers (IAD). The court dismissed the indictment, because 120 days had passed after defendant arrived in Oregon to stand trial. We reverse.

There is no disagreement on the operative facts. Oregon sought defendant's return from the Washington State Penitentiary to stand trial for murder, and he was returned on May 16, 1986. On June 13, 1986, he moved for a continuance and, on July 16, he moved to suppress evidence. The motions were allowed. The state appealed, and we reversed and remanded for the court to reconsider its ruling in the light of our opinion. *State v. Bernson,* 93 Or App 115, 760 P2d 1362, *rev den* 307 Or 246 (1988). The Supreme Court denied review on December 20, 1988, and the appellate judgment was issued on February 16, 1989. Nothing further happened until May 30, 1989, when the state moved for a continuance. On June 28, 1989, while the state's motion for a continuance was pending, defendant moved to dismiss for violations of the time restrictions. The motion was allowed. The trial court concluded that the time had not been tolled, because the state had not moved for a continuance during the first appeal, and that the time had run by September 16, 1986.

■ IAD is designed to encourage expeditious and orderly disposition of outstanding charges and the determination of the proper status of detainers. *United States v. Eaddy,* 595 F2d 341, 343 (6th Cir 1979). The act allows the person against

---

[1] ORS 135.775 provides, in part:

"ARTICLE IV

"* * * * *

"(c) In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the counsel of the prisoner being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

"ARTICLE VI

"(a) In determining the duration and expiration dates of the time periods provided in Articles III and IV of this agreement, the running of such time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction of the matter."

whom a detainer is lodged to demand the resolution of outstanding charges. ORS 135.775, Art III. It also provides a method whereby the state in which charges are pending may obtain a prisoner's presence for trial. ORS 135.775, Art IV. In either case, IAD sets time limits within which a trial must be commenced. Where, as here, the state causes a defendant to be brought back for trial, IAD requires that trial start within 120 days after the prisoner's return to the state. ORS 135.775, Art IV(c). The time limits are tolled during periods when the defendant is "unable to stand trial." ORS 135.775, Art VI(a).

The federal courts, and some state courts, have interpreted "unable to stand trial" to "exclude all those periods of delay occasioned by the defendant." *See, e.g., U.S. v. Taylor,* 861 F2d 316, 321 (1st Cir 1988); *United States v. Black,* 609 F2d 1330, 1334-35 (9th Cir 1979), *cert den* 449 US 847 (1980); *People v. Harris,* 148 Mich App 506, 384 NW2d 816 (1986). Those cases expressly treat defense motions and their consequences as delays occasioned by the defendant and include the time needed to resolve them as periods during which the time limit is tolled. It has also been held that time consumed in resolving a good faith appeal of a defendant's successful motion will toll the time period. *United States v. Roy,* 771 F2d 54 (2nd Cir 1985), *cert den* 475 US 1110 (1986); *Commonwealth v. Petrozziello,* 22 Mass App 71, 491 NE2d 627, *cert den* 479 US 852 (1986).

Oregon appellate courts have not addressed the tolling provisions under IAD, but they have, under analogous provisions, held that time consumed by defense motions will be excluded in calculating time limitations. *See, e.g., Haynes v. Burks,* 290 Or 75, 619 P2d 632 (1980); *State v. Fannin,* 48 Or App 795, 617 P2d 953 (1980); *State v. Robinson,* 3 Or App 200, 473 P2d 152 (1970). When a defendant files pretrial motions, the state is forced to respond to them or concede them. If the time limitation is not tolled while defense pretrial motions are pending, defendants may be encouraged to file motions. Failure to toll the time during the state's good faith appeal of a trial court's decision on a pretrial motion renders a normally appealable order final for all practical purposes, because it is unlikely that the appellate process could be completed within the statutory time limit. We do not read IAD as denying the prosecution its right to appeal what are often pivotal pretrial issues. We hold that time expended in defense pretrial

motions, including time necessary to resolve them on appeal, is time that the prisoner is "unable to stand trial" and tolls the 120-day period.

■      We also conclude that the state was not required to request a continuance under the provisions of Article IV(c) in order to toll the 120-day period during the appellate process. Article VI(a) provides that the "time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial." ORS 135.775. There is no requirement that the parties request a continuance in order to trigger that tolling provision. As the court noted in *U.S. v. Roy,* 830 F2d 628, 634 (7th Cir 1987), *cert den* 484 US 1068 (1988), it would make the tolling provision of Article VI "mere surplusage" to interpret it to perform no function distinct from the good cause continuance provisions of Articles III and IV.

Under our analysis of the facts in this case, there are three separate events that automatically tolled the 120-day period. The first was when defendant, on June 13, 1986, requested a continuance "until sometime in early September." Given that his original trial date was set for July 7, defendant was asking for approximately a two-month delay. The exact date that tolling due to that continuance would have ceased is irrelevant because, before the time had begun to run again, defendant filed his motion to suppress. By filing a notice of appeal from the order on that motion, the state continued the tolling until the end of the appellate process on February 16, 1989. By that date, only 28 countable days had passed.

■      After remand in that appeal, defendant similarly was "unable to stand trial." His assertion that other crimes evidence should be excluded remained unresolved after our decision. Therefore, the period after February 16, 1989, was a "period of delay occasioned by defendant" that tolled the time. Even defendant's memorandum to the trial court, submitted with his motion for a hearing after this court's appellate judgment, recognized that:

> "[U]ntil the matter is reconsidered and a new order issued by this court, neither the state, nor the defendant, can effectively prepare for trial until it is clear what evidence will or will not be admitted under the new order of this court pursuant to the directive of the Court of Appeals."

The resolution of the issues raised by defendant's motion *in*

*limine* was necessary in order for all parties to be able properly to prepare for trial. The state did not have an obligation to ensure that defendant's motion be decided. Contrary to the dissent's assertion that there was no way for a defendant to get the matter heard, he could have requested that the trial court quickly decide the motion, as he eventually did.[2] Until he did so, however, it was his effort to exclude evidence that resulted in the case not proceeding to trial.

This is not a case where a detainer was used "by prosecutors to exact punishment without having to try a charge which they feel would not result in a conviction." *Note,* "Detainers and the Correctional Process," 1966 Wash U L Q 417, 423. The delays here were occasioned by defendant and do not call for the severe remedy of dismissal, with prejudice, of a murder charge. We hold that the 120-day time limit of ORS 135.775, Art IV(c), was tolled on June 13, 1986, by defendant's request for a continuance and the time will not begin to run again until the issues raised by his July 16, 1986, motion are resolved.

Reversed and remanded.

**RICHARDSON, P. J.,** dissenting.

I agree with the majority's analysis except the conclusion that on remand, after the first appeal, defendant was "unable to stand trial" because his motion had not been finally resolved and, therefore, that the time in ORS 135.775 was tolled. In a technical sense, defendant's motion to exclude certain evidence, filed July 16, 1986, was not completely resolved by the appellate judgment. However, I do not think that, in this case, the time after the appellate judgment until the trial is actually commenced should be charged to defendant under the theory that he was unable to stand trial.

---

[2] The dissent cites *State v. Crosby,* 217 Or 393, 342 P2d 831 (1959), to support the proposition that the prosecution had an obligation to have the motion heard by the court. However, in that case, which focused on a defendant's statutory and constitutional right to be brought to trial without delay, the Supreme Court said:

"Obviously, where delay is caused by the filing of dilatory pleas and motions on behalf of the defendant, he is not entitled to be discharged on account thereof." 217 Or at 406.

We conclude that, because the delay here was caused by defendant's motion, he, similarly, is not entitled to have the murder charge dropped on account thereof.

The appellate process was completed when the appellate judgment was issued on February 16, 1989. The prosecutor, and perhaps the trial court were confused about when the trial court acquired jurisdiction to proceed after the remand. Under ORS 19.190 the trial court had jurisdiction when the appellate judgment issued. However, as the record shows, the prosecutor and the court concluded that an order of the trial court entering the mandate was necessary. Accordingly, the prosecutor sought an order, and the court entered it on May 26, 1989. There is no explanation of why the court waited that long to take jurisdiction under its theory that recording the "mandate" was necessary. On May 30, 1989, the prosecutor moved for an extension of the time in ORS 135.775 to allow the state to prepare for trial. Defendant responded by moving, on June 28, 1989, for a pretrial hearing to resolve the issues specified in the appellate judgment and to dismiss the indictment under ORS 135.775. The court dismissed the indictment, and the other motions were mooted.

It is the obligation of the prosecutor and the court to bring the matter to trial or to a hearing to resolve pretrial matters. Even though a defendant may file a motion that requires a hearing, there is no way for him to force the matter to be heard timely. *State v. Crosby,* 217 Or 393, 342 P2d 831 (1959). Our decision instructed the trial court what to do respecting defendant's motion to exclude evidence. The matter was already before the court without the necessity for defendant to file an additional motion or otherwise request the court to act as the appellate judgment required.

A postponement to resolve the state's appeal includes a reasonable time for the trial court to resolve the matter after the appellate judgment issues. It is probably difficult to determine, with any degree of precision, what a reasonable time would be. However, a three and one-half month delay on the basis of a misunderstanding of the effective date of the appellate judgment certainly cannot be considered reasonable nor be ascribed to defendant's side of the delay ledger.

The majority appears to put much emphasis on the fact that it was defendant's motion to exclude evidence that needed final resolution. In fact, the state had the laboring oar to convince the trial court to allow the evidence. Defendant had moved to exclude "other crimes" evidence that the state

intended to offer to prove defendant's identity as the killer in this case. The trial court excluded the evidence on alternate bases, either of which would have been sufficient: It was irrelevant to the issue of identity or, if it were relevant, the prejudicial impact made it inadmissible under OEC 403. We concluded that the evidence was relevant and its probative value strong and, in that light, the trial court would have to reconsider its determination that the evidence was excluded as unduly prejudicial. Although we "reversed" the order excluding the evidence, we did not hold that it was admissible. It was left for the state to convince the trial court that it had erred by excluding the evidence under OEC 403.

As the majority notes, 28 countable days had passed by February 16, 1989, when the appellate judgment issued. If the subsequent period was not tolled, the 120-day time limit passed by May 19, 1989, and defendant was entitled to dismissal.

I dissent.