Thomas DILLON, Defendant–Appellant.

v.

STATE of Tennessee, Appellee.

Supreme Court of Tennessee,
at Knoxville.

Nov. 16, 1992.

Rehearing Denied, Dec. 21, 1992.

Certiorari Denied March 22, 1993.

See 113 S.Ct. 1589.

Douglas A. Trant, Knoxville, for defendant-appellant.

Charles W. Burson, Atty. Gen. & Reporter, Rebecca L. Gundt, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

DROWOTA, Justice.

This case involves a "speedy trial" provision of the Interstate Compact on Detainers, T.C.A. §§ 40–31–101 to 108 (1990). Specifically, we must decide whether the statute's 120–day period for bringing a prisoner to trial was tolled by (1) the State's having obtained a continuance, or (2) the Defendant's inability to stand trial.

In June 1989, a Knox County Grand Jury returned a presentment charging Defendant Thomas Dillon with the first degree and felony murder of Keith Nolley in a Knoxville motel room. At the time of presentment, Defendant was in federal custody serving a sentence on other charges. On December 11, 1990, Defendant was brought from the federal correctional institute at Jessup, Georgia to stand trial on the Knox County murder charges. This transfer was effected pursuant to a request for temporary custody under the Interstate Compact on Detainers (the "Compact"). *See* T.C.A. § 40–31–101, art. IV (1990).

On December 14, 1990, Defendant was arraigned in Knox County Criminal Court and his trial set for February 11, 1991. On February 8, 1991, a hearing was held on Defendant's motion to suppress evidence allegedly seized in violation of his federal and state constitutional rights. On February 11, 1991, the original trial date, the trial court granted Defendant's motion to suppress and, upon the State's motion, reset the trial for April 1, 1991. On March 5, 1991, the trial court granted the State an interlocutory appeal on the suppression issue.

Also on March 5, 1991, an in-chambers discussion took place between the judge, the prosecutors, and counsel for Defendant. While the parties' accounts of this discussion differ, two facts are undisputed: First, counsel for Defendant was not given prior notice of the meeting; second, a verbatim record of the proceeding was not preserved, by court reporter or otherwise.

The following day, March 6, the trial court entered an order purporting to suspend the speedy trial provision of the Com-

pact and continuing the case pending an appellate determination of the suppression issue.

On April 22, 1991, 130 days after Defendant was brought to Tennessee, Defendant moved to dismiss the presentment for the State's failure to commence trial within 120 days. On May 17, 1991, after a hearing, the trial court entered an order stating (1) the State failed to commence trial within 120 days of Defendant's arrival in Tennessee, (2) the court's March 6 order, purporting to suspend the 120-day provision, was not entered in compliance with the Compact, and that therefore (3) the presentment must be dismissed with prejudice and the Defendant returned to federal custody.

On May 20, 1991, the State appealed the dismissal and the Court of Criminal Appeals stayed Defendant's return to federal custody. On October 10, 1991, having consolidated the State's Rule 9 interlocutory appeal of the suppression order and Rule 3 appeal of the dismissal, the Court of Criminal Appeals reinstated the presentment, reversed the suppression order, and remanded the case for trial.

### I.

Resolution of this appeal requires us to interpret several provisions of the Interstate Compact on Detainers, as enacted in Tennessee by T.C.A. §§ 40–31–101 to 108 (1990). This Compact has been adopted by the federal government, the District of Columbia, and 48 states. *See* 18 U.S.C.A. App., Interstate Agreement on Detainers, § 1, Historical Note (1985) (Mississippi and Louisiana do not participate).

The Compact establishes uniform procedures whereby a state may resolve its charges against another jurisdiction's prisoner. Because detainers adversely affect programs of prisoner treatment and rehabilitation, *see generally* Note, *The Interstate Agreement on Detainers: Defining the Federal Role*, 31 Vand.L.Rev. 1017, 1019–20 (1978), the Compact's purpose is to provide cooperative state procedures for the expeditious and orderly disposition of the charges underlying such detainers. *See* T.C.A. § 40–31–101, art. I. To this end, the Compact provides that when a prisoner is called to answer charges in another jurisdiction,

> trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

*Id.* at art. IV(c).[1] If a prisoner is not brought to trial within the specified time period, the charges against him must be dismissed with prejudice. *See id.* at art. V(c). Because of its remedial nature, the Compact is to be liberally construed in favor of the prisoners it was intended to benefit. *See Nelms v. State*, 532 S.W.2d 923, 927 (Tenn.1976).

The Compact provides for tolling of the 120-day period in two situations. First, the period is tolled by "any necessary or reasonable continuance" granted "for good cause shown in open court." *See* T.C.A. § 40–31–101, art. IV(c). Second, "running of [the Compact's speedy trial] periods shall be tolled whenever and for as long as the prisoner is unable to stand trial." *Id.* at art. VI(a). Because Defendant was not tried within 120 days after being brought to Tennessee, we must determine whether either of these tolling provisions is applicable.

### II.

The Compact provides that "for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." T.C.A. § 40–31–101, art. IV(c).

█ The parties agree that, on March 5, 1991, counsel for Defendant was ap-

---

1. The Compact also contains a provision whereby a prisoner against whom a detainer has been lodged may demand trial within 180 days. *See* T.C.A. § 40–31–101, art. III(a) (1990); *State v. Moore*, 774 S.W.2d 590, 593 (Tenn.1989) (180 days runs from date State receives notice of prisoner's request for prompt disposition).

proached in a courthouse hallway by the State prosecutors and asked to step into the trial judge's chambers. There then ensued a discussion respecting the State's request to continue Defendant's case during appellate review of the trial court's suppression order. The State urges that the continuance issued the following day was granted in accordance with the statutory requirement that "good cause [be] shown in open court." We disagree.

■ In order to effectively toll the 120-day period, the statute requires that the prisoner or his counsel be present during a judicial determination as to whether good cause has been shown for granting a continuance. *Id.* A continuance granted *ex parte* has no tolling effect. Defendants are thus given the right to appear and contest the State's assertion of good cause.

Here, the State filed no motion or otherwise apprised Defendant of its intention to seek a continuance. Instead, defense counsel was stopped in a hallway and asked to attend an impromptu discussion in chambers. Appearing thus without notice, Defendant had no opportunity to prepare a response to the State's request. We decline to adopt an interpretation of the Compact that renders Defendant's right to appear a mere formality. Because Defendant was denied the opportunity to prepare a reasoned response, the resulting continuance was not issued in accordance with the statutory requirements and thus had no tolling effect.

■ We note also the failure of the statutory requirement that the continuance be granted in "open court." "Open court" requires, at a minimum, that a verbatim record be made of the proceedings.[2] *See* T.C.A. § 40–14–307(a) (1990). The State has an affirmative duty to abide by the statutory requirements and make a record on the question whether a continuance has been granted for good cause. *See Johnson v. Stagner,* 781 F.2d 758, 763 (9th Cir.1986). Although we decide the present issue based on lack of notice to Defendant, because

there is no transcript of the in-chambers discussion, we would in any event be unable to properly exercise our appellate duty to review whether the State met its burden of showing good cause for a continuance.

### III.

The Compact also provides that its speedy trial provisions "shall be tolled whenever and for as long as the prisoner is *unable to stand trial,* as determined by the court having jurisdiction of the matter." T.C.A. § 40–31–101, art. VI(a) (emphasis added). In *State v. Moore,* 774 S.W.2d 590, 597 (Tenn.1989), we recognized that the prisoner is "unable to stand trial" if he is absent from the jurisdiction. *See also Fuente v. State,* 549 So.2d 652, 656 (Fla.1989) (citing cases). Further, we agree that a prisoner is unable to stand trial while physically or mentally disabled. *See Stroble v. Anderson,* 587 F.2d 830, 838 (6th Cir.1978).

■ Moreover, a number of courts have held that a prisoner is unable to stand trial during "periods of delay occasioned by the defendant." *See, e.g., United States v. Nesbitt,* 852 F.2d 1502, 1516 (7th Cir.1988); *United States v. Roy,* 771 F.2d 54, 59 (2d Cir.1985); *State v. Bernson,* 106 Or.App. 252, 255–56, 807 P.2d 309, 310–11 (1991). These cases have gone on to interpret "periods of delay occasioned by the defendant" to include time consumed by consideration of defendant's pretrial motions, *see Nesbitt,* 852 F.2d at 1516, as well as time taken by resolution of good-faith appeals from successful defense motions. *See Roy,* 771 F.2d at 59; *Bernson,* 106 Or.App. at 255–56, 807 P.2d at 310–11.

■ We find the interpretation placed on the phrase "unable to stand trial" by courts such as *Roy* and *Bernson* persuasive. In *Bernson,* the Court reasoned:

Failure to toll the time during the state's good faith appeal of a trial court's decision on a pretrial motion renders a normally appealable order final for all prac-

---

2. We decline to hold, as Defendant urges, that "open court" invariably requires a "judge on the bench," *see Stroble v. Anderson,* 587 F.2d 830, 839 (6th Cir.1978), and can never be satisfied by an in-chambers, recorded hearing.

tical purposes .... [therefore] denying the prosecution its right to appeal what are often pivotal pretrial issues.

*Bernson,* 106 Or.App. at 255, 807 P.2d at 310. Similarly, the *Roy* Court explained that since the prosecution's nonfrivolous appeal was taken in good faith and without attempt to delay the trial, the time needed to resolve the appeal was properly chargeable to the defendant as time "the prisoner is unable to stand trial." *See Roy,* 771 F.2d at 59 (quoting with approval *United States v. Roy,* 597 F.Supp. 1210, 1217 (D.Conn.1984)). "The time from the filing of [defendant's] motion to suppress until the conclusion of the appellate process directly attributable to that motion" is time the defendant is unable to stand trial. *Roy,* 771 F.2d at 59. Because we agree with the reasoning expressed in cases such as *Roy* and *Bernson,* we hold that the applicable 120–day period was tolled as of January 22, 1991, the date the Defendant filed his motion to suppress.

### IV.

The final issue in this case concerns the sufficiency of a search warrant issued by a federal magistrate in Florida. The search warrant was based upon the affidavit of a federal law enforcement official given as a result of a lengthy federal investigation. The trial judge suppressed the evidence obtained under the warrant seized from a safety deposit box belonging to the Defendant in Sarasota, Florida. The box contained a .22 caliber pistol with silencer and clip allegedly owned by the Defendant and used in the murder committed in Knoxville for which he was ultimately charged. The trial court's ruling was based upon a finding that the affidavit lacked sufficient probable cause connecting the weapon to the safety deposit box.

■ The State insists that federal law controls our review of the search warrant. The Court of Criminal Appeals, applying Tennessee law as urged by the defense, held that the affidavit contained sufficient information for a reasonable person to conclude that the weapon might be in the lock box.

In *State v. Mollica,* 114 N.J. 329, 554 A.2d 1315 (1989), federal law enforcement officials obtained evidence in a manner consistent with federal law, but had the evidence been obtained in the same manner by state law enforcement personnel, it would have violated state law. The question thus presented in *Mollica* was whether the evidence seized should have been suppressed in the state courts after federal agents turned the evidence over to state officials.

The New Jersey Supreme Court in *Mollica* first noted that "[b]ecause federal officers necessarily act in the various states, but in the exercise of federal jurisdictional power, pursuant to federal authority and in accordance with federal standards, state courts treat such officers as officers from another jurisdiction." *Mollica,* 554 A.2d at 1327. *See also State v. Bradley,* 105 Wash.2d 898, 719 P.2d 546 (1986); *State v. Dreibelbis,* 147 Vt. 98, 511 A.2d 307 (1986); *Morales v. State,* 407 So.2d 321 (Fla.App. 1981). Accordingly, the court went on to hold that when evidence is seized "by federal officers acting independently of state authorities and in conformity with federal law, state constitutional [protection against unreasonable searches and seizures] does not bar subsequent prosecutorial use of [the seized evidence] for such purposes as establishing probable cause for the issuance of search warrants." *Mollica,* 554 A.2d at 1318. Put another way, state law does not govern the federal officers with respect to evidence they seize, *provided* they acted pursuant to federal authority and consistent with federal law, and provided further they acted independently of state officials. *Id.* at 1330. The New Jersey Supreme Court reasoned that

in determining the validity of a search and seizure conducted by officers of another jurisdiction, the critical assumption that obviates the application of the state constitution is that the state's constitutional goals will not thereby be compromised. In our jurisdiction, we recognize that an essential objective of our constitutional prohibition against unreasonable search and seizure and the remedial exclusionary rule is to deter unlawful police conduct. These constitutional protec-

tions may also implicate concerns of judicial integrity. Further, the exclusionary rule serves to vindicate the impairment of an individual's state constitutional right to be free from unreasonable search and seizure.

None of these constitutional values, however, is genuinely threatened by the search and seizure of evidence, conducted by officers of another jurisdiction under the authority and in conformity with the law of their own jurisdiction, that is totally independent of our own government officers. Thus, in that context, no purpose of deterrence relating to the conduct of state officials is frustrated, because it is only the conduct of another jurisdiction's officials that is involved. Judicial integrity is not imperiled because there has been no misuse or perversion of judicial process. Further, no citizen's individual constitutional rights fail of vindication because no state official or person acting under color of state law has violated the state constitution.

*Mollica,* 554 A.2d at 1328 (citations omitted). It should be emphasized that in order for the rule to apply, the federal officer must not have acted as an agent of the state at the time he acquired the evidence. *Id.* at 1329–30.[3] *See also* LaFave 2d, *Search and Seizure,* § 1.5(c) (Supp.1992) (embracing *Mollica* analysis).

The search in the present case was conducted in Florida by federal officials pursuant to a search warrant issued by a federal judge as a result of an extensive federal investigation into the criminal activities of the Defendant. In view of these facts, the *Mollica* reasoning applies and we approve of the approach taken by the New Jersey Supreme Court in that case insofar as it relates to the facts presented here.[4] Accordingly, we hold that it was error for the trial court, like the Court of Criminal Appeals, to analyze the sufficiency of the search warrant under the somewhat stricter standards of Tennessee law. *See generally, State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989).

In view of the foregoing, the judgment of the Court of Criminal Appeals is modified in part and affirmed in part. The case is remanded to the trial court for further proceedings consistent with this opinion, specifically for an examination of the sufficiency of the search warrant in view of our adoption of the rule announced in *Mollica, supra.* Costs shall be taxed against the Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

**3.** In making this determination, "[d]iffering relationships and interactions may suffice to establish agency. Thus, antecedent mutual planning, joint operations, cooperative investigations, or mutual assistance between federal and state officers may sufficiently establish agency and serve to bring the conduct of the federal agents under the color of state law. On the other hand, mere contact, awareness of ongoing investigations, or the exchange of information may not transmute the relationship into one of agency." *Mollica,* 554 A.2d at 1329.

**4.** We will wait for an appropriate case before addressing the analysis to be followed when, for example, federal authorities conduct the search in Tennessee.