# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
March 6, 2007 Session

## STATE OF TENNESSEE v. MARLOW WILLIAMS

**Appeal from the Criminal Court for Shelby County**
**No. 03-04090    Arthur T. Bennett, Judge**

---

**No. W2005-02803-CCA-R3-CD  - Filed September 25, 2007**

---

Appellant, Marlow Williams, was indicted in June of 2003 with six counts of aggravated robbery. In September of 2004, Appellant invoked the provisions of the Interstate Compact on Detainers to dispose of his charges in Tennessee.  The Assistant Attorney General and Shelby County Criminal Court received the Request for Disposition of Indictment on October 4, 2004.  Appellant was transported to Tennessee.  A jury trial was held in September of 2005, where Appellant was found guilty of two counts of aggravated robbery.  The trial court sentenced Appellant to concurrent ten-year sentences, but merged Count 2 for a single sentence under Count 1.  On appeal, Appellant argues that: (1) the trial court improperly denied his motion to dismiss the indictment because his trial was held after the expiration of the 180 days provided for in the Interstate Compact on Detainers; (2) the trial court improperly admitted expert testimony on fingerprints; (3) the evidence was insufficient to support the convictions; and (4) the trial court improperly sentenced him.  We determine that the trial was not held in violation of the Interstate Compact on Detainers and that the trial court properly admitted expert testimony on fingerprints.  Furthermore, despite the improper application of enhancement factor (3), the offense involved more than one victim, we determine that the trial court properly sentenced Appellant.  As a result, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES, and ALAN E. GLENN, JJ., joined.

Claiborne H. Ferguson, Memphis, Tennessee, for the appellant, Marlow Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General,for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On June 19, 2003, the Shelby County Grand Jury indicted Appellant with six counts of aggravated robbery for his involvement in the August 16, 2002 robbery of the M & T Market in Memphis.

On September 24, 2004, Appellant, who was incarcerated in Massachusetts, invoked the provisions of the Interstate Compact on Detainers ("ICD") to dispose of his charges in Tennessee. *See*, T.C.A. § 40-31-101, et seq. The "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints" was received by the Shelby County District Attorney's Office and the Shelby County Criminal Court on October 4, 2004. On October 25, 2004, the Shelby County District Attorney's Office and the trial court signed the "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer." Appellant was transported to the Shelby County Jail on December 19, 2004.

Appellant was appointed counsel on January 4, 2005. On February 2, 2005, at a hearing, the trial court discovered that Appellant's appointed counsel had a conflict. The counsel appointed to represent Appellant informed the trial court that he had previously represented the victim and a witness in the case. At that point, the trial court relieved counsel and appointed new counsel for Appellant. The trial court set the next hearing date as March 2, 2005.

On March 2, 2005, Appellant's case was set for a report date with the trial court. Appellant did not appear in court because the trial court was informed that the second counsel appointed for Appellant was sitting as a special judge in General Sessions Court and could not be present. However, the trial court was informed that counsel was in the process of investigating Appellant's case and requested a report date of April 5, 2005. During the March 2 appearance, Appellant questioned whether the 180 days had passed within which the State, according to the ICD, was required to start his trial . According to Appellant, March 23, 2005, marked the 180th day. Appellant expressed concern that he had not spoken with his attorney. The trial court reset the matter for the next day, March 3, 2005.

On March 3, 2005, Appellant appeared in court. Apparently, no one was able to get in touch with counsel for Appellant to inform him that the matter had been held over for a day. The trial court informed Appellant of the situation and told him that they would proceed with the case on the April 5, 2005 report date.

On April 5, 2005, Appellant again appeared in front of the trial court. During this hearing, Appellant requested a new report date of May 3, 2005.

On May 3, 2005, Appellant informed the trial court that he had filed a motion to dismiss, claiming that his right to a speedy trial under the ICD had been violated. The trial court set the motion to be heard on June 9, 2005.

On May 31, 2005, Appellant sent a letter to his counsel and to the trial court regarding his concerns that the speedy trial provisions of the ICD had been violated.

On June 9, 2005, the trial court was in the middle of a trial. Appellant's motion hearing was reset for June 24, 2005.

On June 24, 2005, Appellant appeared before the trial court to argue the motion to dismiss based on a violation of the ICD. At the hearing, the State argued that they had never requested a delay in the matter and that all of the delays could be attributed to Appellant. The State argued that Appellant had been in front of the court seven times and had not requested a trial date or informed the trial court that he was ready for trial. In response, Appellant argued that it was not his fault that he "had to go through two legal counsel to get to this point" and that his ICD request indicated his desire to go to trial and have the matters resolved.

At the conclusion of the hearing, the trial court stated:

[T]he Court feels that [with] this defendant there's [sic] been some delays beyond 180 days but - and I think maybe because of the Court's calendar and the defendant's action and there are certain circumstances that had to take place because of the law required it, changing of attorneys after [original counsel] was appointed in this matter.

The Court's going to take the position at this time that it's going to deny the defendant's motion at this time, but we'll give him a fast and speedy trial in these cases that we have before us. And you may note your exception.

The trial court also noted that "we've been continuing these matters to get this matter settled, and now we're at a point of I've ruled on it that these - most of these delays were the defendant's delays." After ruling, the trial court set the trial date for July 25, 2005, the earliest possible trial date available.

On June 29, 2005, Appellant notified the Board of Professional Responsibility of his dissatisfaction with his counsel's representation. In response to a recommendation from the Board of Professional Responsibility, counsel for Appellant filed a motion to withdraw. The trial court granted the motion on July 13, 2005, and appointed substitute counsel at that time. Substitute counsel accepted the appointment and announced that he would be prepared to proceed with trial on July 25. At the conclusion of the hearing, counsel also renewed the motion to dismiss.

On July 25, 2005, the date scheduled for Appellant's trial, counsel for Appellant informed the trial court that Appellant wanted to proceed, but that he wanted to file a motion to suppress on

behalf of Appellant. According to counsel, Appellant objected to anything that would delay his trial further. Counsel requested that the trial court hear the motion to suppress immediately before the trial. At the conclusion of the hearing, the parties agreed to pick the jury that day and argue the motion the following day.

On July 26, 2005, the State informed the trial court that one of the key witnesses had a medical emergency and would be unable to appear. According to the State, they could not proceed to trial without this witness, and the witness would be unavailable for at least one week. The trial court attempted to reset the trial for August, but the State informed the trial court that the victim would be in Louisiana training troops for deployment to Iraq. Over objections by counsel for Appellant, the trial court declared a mistrial, and the case was reset for trial on September 6, 2005. Prior to trial, the State elected to nolle prosequi Counts 3-6 of the indictment.

*Trial Testimony*

At trial, the victim, Maan Alrebhawi, testified that he was working at the M & T Market in Memphis on August 16, 2002, when three men, including Appellant, entered the store. The men had most of their faces covered up, but the victim was able to see their brow area and their eyes. As the men approached the counter, the victim stated that Appellant placed both of his hands on the glass counter and vaulted himself over it. Once behind the counter, Appellant hit the victim in the face and then demanded that he open the cash register. Appellant pointed a gun at the victim during the ordeal. The victim opened the register, and Appellant took the money and left the store. According to the victim, all three of the men were armed.

The victim testified that he had been working at the store for several months and that the store sold normal convenience store items like snacks and drinks as well as jewelry. The counter near the register was a glass display counter that housed jewelry. According to the victim, he cleaned the glass counter top at least three to four times a day per the owner's instructions.

Sergeant William Woodard was the lead investigator assigned to the case. According to both Sergeant Woodard and Officer Gerald Paige, the crime scene officer, a right palm print was lifted from the glass counter at the crime scene. Appellant was developed as a suspect as a result of the palm print. Sergeant Woodard prepared a photographic line-up and presented it to the victim for review. The victim was able to identify Appellant from the photographic line-up as one of the robbers.

Officer Jim Hill, a latent print examiner with the Memphis Police Department, also testified at trial. Over objection by Appellant, Officer Hill was declared an expert in the field of fingerprint identification. Officer Hill was the "double verifier" of the prints recovered at the M & T Market. The original identification of the prints was made by Officer Jerry Sims and verified by Officer Hill. Officer Hill testified when he receives a fingerprint, he runs it through the Automated Fingerprint Identification System ("AFIS"), a computer matching system. The AFIS then returns twenty-four

possible fingerprint matches based on the submitted print. At that point, the twenty-four possible matches are reviewed by hand to establish if there is a match. According to Officer Hill, the palm print recovered from the scene matched the prints of Appellant.

Deputy Bobby Spence, a fingerprint technician from the Records Identification Division, was called to take the fingerprints from Appellant. Deputy Spence testified that the prints taken from Appellant just prior to testifying in court matched the file for Marlow Williams.

Appellant took the stand in his own defense. He testified that he had been in the M & T Market on a prior occasion to look at jewelry for his girlfriend, but that he was not responsible for the robbery.

At the conclusion of the proof, the jury found Appellant guilty of two counts of aggravated robbery and recommended a fine of $15,000 for each conviction. After a sentencing hearing, the trial court sentenced Appellant to ten years for each conviction, but merged the convictions into a single conviction under Count 1. The trial court ordered the sentences to be served concurrently. Appellant filed a timely motion for new trial, which was denied by the trial court. On appeal, Appellant argues that: (1) the trial court improperly denied his motion to dismiss the indictment because his trial was held in violation of the speedy trial provisions of the ICD; (2) the trial court improperly admitted expert testimony on fingerprints; (3) the evidence was insufficient to support the convictions; and (4) the trial court improperly applied enhancement factors to his sentence.

*Analysis*
*Speedy Trial Provision of the ICD*

On appeal, Appellant contends that the trial court erred by denying the motion to dismiss the indictments based on a violation of the ICD. Specifically, Appellant argues that the State failed to bring him to trial within 180 days as required by the ICD and that, as a result, the indictments should be dismissed. The State disagrees, arguing that the "record and the law do not support [Appellant's] claims."

A detainer is "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent." *Fex v. Michigan*, 507 U.S. 43, 44 (1993). The Interstate Compact on Detainers, codified at T.C.A. §§ 40-31-101 to -108, has as its primary purpose to provide a cooperative procedure among the states for the expeditious and orderly disposition of charges against a prisoner. *Dillon v. State*, 844 S.W.2d 139, 141 (Tenn. 1992). The procedure results in only a temporary transfer. *State ex rel. Young v. Rose*, 670 S.W.2d 238, 240 (Tenn. Crim. App. 1984).

The ICD, Article III, paragraph (a) provides, in part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, the person shall be brought to trial *within one hundred eighty (180) days* after having caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the person's imprisonment and request for a final disposition to be made of the indictment, information or complaint; provided, that for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter *may grant any necessary or reasonable continuance.*

T.C.A. § 40-31-101(emphasis added).

Under Tennessee law, the 180-day period begins to run on the date the petition is received by the court and district attorney in the county where the charges are pending.[1] *State v. Moore*, 774 S.W.2d 590, 593 (Tenn. 1989); *Hershel Clark v. State*, No. 02C01-9112-CR-00273, 1993 WL 188052, at *7 (Tenn. Crim. App., at Jackson, June 2, 1993). The speedy trial provisions of the Act are tolled by delay "occasioned by the defendant." *Dillon*, 844 S.W.2d at 142 (citations omitted). Typically, delays at the hands of the defendant would fall into the category of reasonable and necessary. *See State v. Tyson*, 603 S.W.2d 748 (Tenn. Crim. App. 1980); *Dillon*, 844 S.W.2d at 142. However, the provisions of the ICD are to be construed liberally in favor of prisoners it was intended to benefit. *State v. Gipson*, 670 S.W.2d 637, 639 (Tenn. Crim. App. 1984). The provisions of the compact are, however, statutory rights, not fundamental, constitutional, or jurisdictional. *Grizzell v. Tennessee*, 601 F.Supp. 230, 231 (M.D. Tenn. 1984). Failure to comply with the 180-day time limit does not automatically require a dismissal of the indictment if a continuance beyond that period is necessary or reasonable. *Gipson*, 670 S.W.2d at 639. This Court has held that a crowded docket was not a necessary or reasonable ground for continuance and set aside the indictment. *Id.* Further, negligence on the part of the State does not constitute good cause for delay. *See State v. Green*, 680 S.W.2d 474, 475 (Tenn. Crim. App. 1984), *overruled on other grounds by State v. Moore*, 774 S.W.2d 590 (Tenn. 1989).

From the record, it appears that the trial court and the State received the petition on October 4, 2004. Thus, by our calculations, the 180 days would have expired on April 2, 2005. April 2, 2005, was a Saturday. According to Tennessee Rule of Criminal Procedure 45(a):

---

[1]On appeal, both Appellant and the State incorrectly assert that the 180-day period began to run from the date that the prosecutor and trial court signed the "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer." The time-period begins to run when the petition is *received* by the court and district attorney in the county where the charges are pending. According to the Certified Mail slip in the record, the court and the district attorney received the petition on October 4, 2004.

Time.-(a) Computation.-In computing any period of time the day of the act or event from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday, or a legal holiday, . . . in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday . . . .

Thus, Appellant's trial should have commenced on Monday, April 4, 2005. Obviously, Appellant's trial did not commence by April 4, 2005. Consequently, we must determine if the time limitation was tolled for any reason or if a continuance beyond the time period was reasonable or necessary. Looking to the sequence of events, it appears that on February 2, 2005, Appellant's case was set for a new report date of March 2, 2005 because counsel for Appellant had a conflict of interest. This constituted a delay of twenty-eight days and would be considered a reasonable and necessary continuance by the trial court so that new counsel could be appointed for Appellant. On March 2, 2005, Appellant requested another report date of April 5, 2005, so that counsel could meet with Appellant and review discovery. This constituted a delay of thirty-four days and is again reasonable and necessary. Then, on April 5, 2005, Appellant requested another report date of May 3, 2005. This constituted a delay of twenty-eight days and is attributable to Appellant as he requested the continuance. Thus, all of the delays that are attributable to Appellant total ninety days. Consequently, the 180-day period of time was tolled during this ninety-day time period.

Additionally, when Appellant filed a motion to dismiss the indictment on May 3, 2005, on the grounds that the State had not commenced the trial within the 180-day period, this also had the effect of tolling the ICD time constraint. *See Dillon*, 844 S.W.2d at 142. The motion was ruled upon on June 24, 2005, so Appellant's motion tolled the time limitation from May 3, 2005 until June 24, 2005, for a total of fifty-two days. Adding together the delays "occasioned" by Appellant results in a total of 142 days that the ICD time constraint provision was tolled.

There were additional delays in the trial between July 25, 2005 and September 6, 2005. The State argues these delays are also attributable to Appellant because the "unavailability of the State's witnesses, the victim and another witness [for the July trial date] was the effect of the numerous delays caused by [Appellant]." We do not see how Appellant could be held responsible for the unavailability of the State's witnesses and, therefore, decline to attribute the delays between July 25, 2005 and September 6, 2005 to Appellant. We consider the delay of these additional twelve days, however, as "good cause" for a continuance by the trial court, as the trial court deemed the continuance "necessary or reasonable" in accordance with T.C.A. § 40-31-101. Moreover, we recognize that courts in other jurisdictions have determined that the "unavailability of witnesses" is a "good cause" justifying a delay in bringing a defendant to trial under the ICD. *See e.g., People v. Poston*, 108 Cal. App. 3d 633, 641 (1980) (citing *State v. Collins*, 224 S.E.2d 647, 649 (1976)).

Thus, the time for trial is tolled a total of 154 days from April 4, 2005. Therefore, we compute that the trial should have commenced by Monday, September 5, 2005. However, Monday, September 5, 2005 was Labor Day, a legal holiday. Because September 5, 2005 was a legal holiday,

Appellant's trial should have commenced by Tuesday, September 6, 2005. *See* Tenn. R. Crim. P. 45(a). Appellant's trial commenced on September 6, 2005, barely within the 180-day time constraint from the receipt of Appellant's petition when taking into consideration the tolling of the ICD time constraint based on delays attributable to Appellant and delays that were deemed reasonable and necessary by the trial court. The motion to dismiss based on an alleged violation of the time constraints of the ICD was properly denied.

*Expert Testimony*

Next, Appellant argues that the trial court erred in allowing the State "to present evidence in the form of an expert opinion that [Appellant's] fingerprints matched those latent prints recovered at the crime scene." Specifically, Appellant argues that Officer Hill was not qualified as an expert and that the proof was admitted without the proper foundation. The State disagrees, contending that the record does not support Appellant's claim and that Appellant failed to object to the introduction of the scientific evidence from the AFIS and has waived his claim in that respect.

Tennessee Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

Tenn. R. Evid. 702.

Tennessee Rule of Evidence 703 provides that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

In *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997), our supreme court addressed the admissibility of scientific evidence under Tennessee Rules of Evidence 702 and 703. Citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court held that evidence and expert testimony regarding scientific theory must be both relevant and reliable before it can be admitted. *McDaniel*, 955 S.W.2d at 265. The court also listed several nonexclusive factors that trial courts may consider when determining the reliability of scientific expert testimony, including:

(1) whether the scientific evidence has been tested and the methodology with which it has been tested; (2) whether the evidence has been subjected to peer review or publication; (3) whether a potential rate of error is known; (4) whether the evidence is generally accepted in the scientific community; and (5) whether the expert's research in the field has been conducted independent of litigation.

*Id.*

Determinations regarding the admissibility of expert testimony are left to the sound discretion of the trial court. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). On appeal, our standard of review is whether the trial court abused its discretion by allowing the expert testimony. Before reversing the trial court's determination, we must determine that the record shows that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

Rule 703 of the Tennessee Rules of Evidence contemplates three possible sources from which an expert may base his/her opinion: (1) information actually perceived by the expert; (2) information made known to the expert by others; and (3) information reasonably relied upon by experts in the particular field. *See* Tenn. R. Evid. 703; *see also* Neil P. Cohen, et. al., *Tennessee Law of Evidence* §§ 7.03(2), 7.03(3), 7.03(4) (3d ed. 1995). In other words, Rule 703 contemplates that inherently reliable information is admissible to show the basis for an expert's opinion, even if the information would otherwise constitute inadmissible hearsay. *See* Tenn. R. Evid. 703. It is not uncommon for an expert witness's opinion to be based on facts or data that are not admissible into evidence, but are reliable. *See* Neil P. Cohen et al., *Tennessee Law of Evidence* § 7.03(4). In determining the reliability of the underlying information, that underlying data must be such that experts in that field reasonably rely on them in forming the same kinds of opinions or inferences that the expert in this case did. *Id.* Thus, Tennessee Rule of Evidence 703 provides that an expert may base an opinion upon inadmissible hearsay, if the type of hearsay is one that would be reasonably relied upon by experts in that situation.

In the instant case, before testifying about the fingerprint analysis results, Officer Hill testified that he had identified many fingerprints in his eleven years as a latent print examiner and listed his qualifications as such. Officer Hill explained that he used magnifiers and AFIS on a daily basis in conjunction with his job as a latent print examiner to examine and identify prints. He explained that if a latent fingerprint was "of value," meaning there are "enough points of identification" on the fingerprint, they "enter that fingerprint into the computer, and it will send back a respondent [sic] of 24 it thinks are closest to matching the fingerprint we entered." From that point, the latent print examiner examines the twenty-four possible matches and compares them to the latent print to establish or rule-out a match. When questioned by counsel for Appellant, Officer Hill also attempted to explain the AFIS. He explained that it was in use when he started as a latent print examiner in 1994 and that he read the manual and talked to the people who used it on a daily basis. Officer Hill also explained that the computer looks at the points of identification on the latent

print and "checks what it thinks are the closest matches to what I've entered." However, Officer Hill was unable to explain the "computerization" of the AFIS. Counsel for Appellant objected to Officer Hill's testimony as an expert because he was only an expert of "part" of what he was testifying to regarding latent prints. We find that the trial court did not abuse its discretion by failing to require further proof of the explanation of the workings of AFIS. The trial court applied the correct legal standard when evaluating the scientific evidence, that the proponent of the evidence must demonstrate its reliability, *see McDaniel*, 955 S.W.2d at 265, and the court's subsequent decision was not "against logic or reasoning," as it was within the court's discretion to accept the expert's opinion as to the reliability of the AFIS.

*Sufficiency of the Evidence*

Next, Appellant argues that the evidence is not legally sufficient to sustain the jury's verdict. Specifically, he argues that the physical evidence cannot be reconciled with the testimony at trial. Appellant argues that the victim testified that Appellant vaulted over the counter using his left hand when only a right palm print was recovered from the counter. Even though the right palm print matched Appellant's print, Appellant argues that the videotape of the incident shows the perpetrator using only his left hand to vault over the counter. The State argues that the evidence actually corroborates the victim's version of the events.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions of witness credibility, the weight and value of evidence, and resolution of conflicts in the evidence are entrusted to the trier of fact. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996).

Appellant was convicted of two counts of aggravated robbery. Pursuant to T.C.A. § 39-13-401, robbery is defined as "the intentional or knowing theft of property from the person of

-10-

another by violence or putting the person in fear." Aggravated robbery is robbery that is "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402.

At the outset, we acknowledge that it is well-settled that the identification of a defendant as the perpetrator of the crime is a question of fact for the jury to determine. *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Keeping that in mind and looking at the evidence in a light most favorable to the State, the proof at trial established that three men, armed with handguns, entered the M & T Market on August 16, 2002 and robbed the store. One of the men used both of his hands to vault over the glass counter during the robbery, pointed a gun at the victim and demanded that he open the cash register.

The victim testified that Appellant was the man who used both hands to vault over the counter and point a gun at him. He identified Appellant both from a photographic lineup and at trial. Further, Officer Hill testified that a right palm print was recovered from the counter of the store that matched Appellant's prints. The jury was able to view the store security tapes which show the perpetrator using both hands to vault over the counter. While Appellant argues that the store security tape shows the perpetrator with a gun in his right hand, it is unclear from our review of the security tapes whether Appellant was actually holding a gun when he placed his hands on the counter, thus increasing the chance that both of his hands made complete contact with the counter. Our review of the tape however is of no consequence as the jury reviewed the tape and determined from the evidence submitted that Appellant was the perpetrator. The evidence at trial supports the jury's conclusion that Appellant was one of the perpetrators of the robbery. This issue is without merit.

*Sentencing*

Lastly, Appellant contends that the trial court erred in sentencing him. Specifically, he argues that the trial court improperly applied enhancement factors (1), (2), (3), and (10). The State concedes that the trial court improperly applied enhancement factor (3), but argues that despite the trial court's error, the other enhancement factors as found by the trial court justify the ten-year sentence.

"When reviewing sentencing issues . . . , the appellate court shall conduct a *de novo* review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. T.C.A. §§ 40-35-103(5), -210(b); *Ashby*, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is

improper." *Ashby*, 823 S.W.2d at 169. In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).[2]

Appellant herein was convicted of two counts of aggravated robbery, a Class B felony. T.C.A. § 39-13-402(b). The sentencing range for a Range I offender who commits a class B felony is eight to twelve years. T.C.A. § 40-35-112(a)(2). In the case herein, the trial court sentenced Appellant to concurrent ten-year sentences.[3] In determining the length of Appellant's sentences, the trial court relied on the following enhancement factors: (1) the defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; (2) the defendant was the leader in the commission of an offense involving two or more actors; (3) the offense involved more than one victim; and (10) the defendant had no hesitation about committing a crime when the risk to human life was high. T.C.A. § 40-35-114(1), -114(2), -114(3), & -114(10).

Initially, we acknowledge as argued by Appellant and conceded by the State, that the trial court improperly applied enhancement factor (3). "Victim," within meaning of enhancement factor (3) for an offense involving more than one victim, is limited in scope to a person or entity that is injured, killed, had property stolen, or had property destroyed by the perpetrator of the crime. *State v. Kelley*, 34 S.W.3d 471, 480 (Tenn. Crim. App. 2000). In this case, Appellant was convicted of two counts of aggravated robbery for the robbery of the M & T Market where Mr. Alrebhawi was working. From the indictments, there was only one specific named victim. The trial court merged Count 2 into Count 1 of sentencing. This enhancement factor was improperly applied. *See also*

---

[2] In response to *Blakely v. Washington*, 542 U.S. 296 (2004), the Tennessee Legislature amended T.C.A. § 40-35-210 so that felonies now have a presumptive sentence beginning at the minimum of the sentencing range. *Compare* T.C.A. § 40-35-210(c) (2003) *with* T.C.A. § 40-35-210(c) (2006). This amendment became effective on June 7, 2005. The legislature also provided that this amendment would apply to defendants who committed a criminal offense on or after June 7, 2005. 2005 Tenn. Pub. Act ch. 353, § 18. In addition, if a defendant committed a criminal offense on or after July 1, 1982 and was sentenced after June 7, 2005, such defendant can elect to be sentenced under these provisions by executing a waiver of their *ex post facto* protections. *Id.* Appellant herein committed the offense on August 16, 2002 and was sentenced on November 18, 2005. There is no waiver executed by Appellant in the record herein. Thus, the amendment to T.C.A. § 40-35-210 does not apply to Appellant.

[3] The record reflects that the convictions for aggravated robbery were in the alternative i.e., Count 1 was based on Appellant's use of violence and Count 2 was based on the Appellant's use of fear. *See* T.C.A. § 39-13-402(a)(1) & (2). At the sentencing hearing, the trial court merged Count 2 for a single sentence and single conviction under Count 1.

*State v. Imfeld*, 70 S.W.3d 698, 706 (Tenn. 2002) (determining that there cannot be multiple victims for any one offense committed against a specific, named victim).

Despite the trial court's improper application of enhancement factor (3), we determine that the application of the remaining enhancement factors justifies the trial court's decision to sentence Appellant to ten years. Appellant has prior convictions for simple assault, theft of property, fraudulent use of a credit card and three convictions for drug possession. All of these offenses are "in addition to those necessary to establish the appropriate range," as Appellant is a Range I offender. *See* T.C.A. § 40-35-114(1). Factor (1) was properly considered by the trial court.

Moreover, the trial court properly determined that Appellant was a "leader in the commission of an offense involving two or more criminal actors." T.C.A. § 40-35-114(3). The testimony at trial revealed that Appellant came into the store with two other men, vaulted over the counter, hit the victim in the face and demanded that he open the register. Then, Appellant took money from the register. The testimony of the victim was confirmed by the store security videotape. This factor was appropriately considered by the trial court.

Finally, the trial court determined that Appellant "had no hesitation about committing a crime when the risk to human life was high." *See* T.C.A. § 40-35-114(10). The victim testified at trial that there were at least two other individuals in the store when Appellant and his fellow perpetrators entered the store with guns drawn. This Court has upheld the application of this enhancement factor in circumstances where individuals other than the named victim are in the area of a defendant's criminal conduct and are subject to high risk of injury. *See State v. Reid*, 91 S.W.2d 247, 311 (Tenn. 2002) (citing *State v. Bingham*, 910 S.W.2d 448, 452-53 (Tenn. Crim. App. 1995)). The trial court properly applied this enhancement factor.

Because we determine that the trial court properly applied three enhancement factors, we determine that the trial court properly imposed a ten-year sentence on Appellant. This issue is without merit.[4]

---

[4]We also note that Appellant has not challenged his sentence in light of the United States Supreme Court decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), or, more recently *Cunningham v. California*, 549 U.S. __, 127 S.Ct. 856 (2007), which called into question our supreme court's decision in *State v. Gomez*, 163 S.W.3d 632, 661 (Tenn. 2005), in which the Tennessee Supreme Court determined that despite the ability of trial judges to set sentences above the presumptive sentence based on the finding of enhancement factors neither found by a jury nor admitted by a defendant, Tennessee's sentencing structure does not violate the Sixth Amendment and does not conflict with *Blakely*. Shortly after the release of *Cunningham*, the United States Supreme Court vacated the judgment in *Gomez* and remanded the case to Tennessee Supreme Court in light of *Cunningham*. *Gomez v. Tennessee*, __ U.S. __, 127 S.Ct. 1209 (2007). Due to Appellant's failure to raise the challenge to his sentence via *Blakely* or *Cunningham*, we decline to address any issue in that regard.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

                                        _____

                                        JERRY L. SMITH, JUDGE