# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT KNOXVILLE
## July 22, 2025 Session

## STATE OF TENNESSEE v. DALLAS WAYNE TOMES, JR.

**Appeal from the Criminal Court for Bradley County**
**No. 20-CR-294     Andrew M. Freiberg, Judge**

_____

### No. E2023-01831-CCA-R3-CD
_____

The Defendant, Dallas Wayne Tomes, Jr., was convicted in the Criminal Court of Bradley County of five counts of burglary of a building other than a habitation, two counts of theft of property valued at more than $1000 but less than $2500, and one count of theft of property valued at $1000 or less. On appeal, the Defendant challenges the trial court's denial of his motion to dismiss his charges pursuant to the Interstate Agreement on Detainers ("IAD") and its classification of him as a career offender, arguing that the trial court failed to conduct a foreign judgments test prior to sentencing. Discerning no error, we affirm the trial court's judgments.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

STEVEN W. SWORD, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined. ROBERT H. MONTGOMERY, JR., J., filed a separate concurring opinion.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division, Tennessee District Public Defenders Conference (on appeal); Richard Hughes, District Public Defender; Jacquelyn Abigail Burke Carroll (at motion for new trial hearing), M. Keith Roberts and Steve Morgan (at pretrial hearings and trial), and Donald Shahan[1] (at arraignment and pretrial hearings) Assistant District Public Defenders, for the appellant, Dallas Wayne Tomes, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Shari Tayloe, District Attorney General; and Ashley Zepeda and Paul Moyle, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1] Donald Shahan became District Public Defender in September of 2022, before the Defendant filed his motion for new trial.

## OPINION

### I.  FACTUAL AND PROCEDURAL HISTORY

The Defendant was convicted in Nassau County, Florida, of one count of possession of more than twenty grams of cannabis on December 8, 1994; burglary of a structure or conveyance on May 11, 1995; and four counts of burglary of a structure or conveyance, four counts of burglary of a dwelling, and one count of armed robbery on April 5, 2001. The Defendant received an effective sentence of twenty years as a habitual offender for his 2001 convictions and was released on parole in October 2017. This case arises from the Defendant's convictions for multiple counts of burglary and theft of property from several businesses located in the Cleveland/Bradley Business Incubator ("Business Incubator") on the Cleveland State Community College campus on January 3, 2020.

The Defendant argues the trial court erred by denying his pretrial motion to dismiss his charges pursuant to the IAD and by failing to conduct a foreign judgments test prior to sentencing him as a career offender. Because the Defendant does not challenge the sufficiency of the evidence, we will confine our summary of the facts to a brief overview of the evidence presented at trial, as well as those necessary to provide context for the issues presented for review.

### A.  PRETRIAL PROCEEDINGS

While still on parole for his 2001 Florida convictions, the Defendant was arrested on January 15, 2020, for offenses related to the charges in this case, which occurred on January 3, 2020. He was released on his own recognizance on January 23, 2020, and was scheduled to report on June 8, 2020. On July 15, 2020, a Bradley County Grand Jury returned a ten-count indictment related to the January 3, 2020 offenses. At some point, the Defendant was placed in custody in Florida.[2] The Bradley County District Attorney's Office sent a detainer notice letter on September 17, 2021, to the Florida Department of Corrections notifying the Defendant of his pending charges in Bradley County pursuant to the IAD. The notification from the District Attorney's Office included a certified copy of the indictment along with the following request:

---

[2] The appellate record does not indicate the exact details of the proceedings that occurred prior to the Defendant's being detained again in Florida. The Defendant was on parole in Tennessee due to his Florida convictions. The presentence report states that he was declared an absconder in Tennessee on June 4, 2020, and Florida approved the violation for absconding supervision. This is the only reference to the Defendant's status in his Florida convictions in the appellate record.

In accordance with Article III of the Interstate Agreement on Detainers (IAD)[,] please inform Dallas Wayne Tomes[,] Jr[.] of his rights to make a request for final disposition[.] If he elects to request final disposition please forward Forms Two (2) through Four (4)[.] If we receive the appropriate forms[,] we will make arrangements for the inmate's return[.]

The record does not include copies of "Forms Two (2) through Four (4)" referenced in the District Attorney's letter. However, the District Attorney's Office indicated its receipt of the forms on November 24, 2021, in the document titled "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer":

In response to Defendant's Forms II-IV received by our office on November 24, 2021 and offer of temporary custody regarding Tomes, Dallas, Inmate No. 973325, who is presently under **indictment**, . . . in the Criminal Court of Bradley County, Tennessee of which I am Assistant District Attorney General, please be advised that I accept temporary and that I propose to bring this person to trial on the indictment . . . named in the offer within the time specified in Article III(a) of the Agreement on Detainers.

(Underlining and bold in original). The trial court certified and signed this document on December 10, 2021.

On December 24, 2021, the Defendant arrived in Bradley County, Tennessee. He was arraigned on January 10, 2022,[3] and on the same date, the State filed its original notice to seek enhanced sentencing, which included a notice of its intent to show that the Defendant qualified as a career offender.[4] The Defendant's case was set for plea or assignment on January 14, 2022. At that hearing, defense counsel requested a continuance to March 14, 2022, to "vet" several issues with the Defendant, including the career offender notice, to potentially resolve the case.[5] The State did not object to the continuance, and it

_____

[3] No transcript of the arraignment hearing is contained in the appellate record. The trial court recited what occurred at the arraignment during the motion to dismiss and during the denial of the Defendant's Rule 29 motion at trial.

[4] An amended notice of the State's intent to seek enhanced sentencing was filed after trial, on May 31, 2022.

[5] No transcript of the January 14, 2022 hearing is contained in the appellate record.

- 3 -

was granted. On May 2, 2022, the Defendant filed a motion to dismiss his charges due to the State's failure to comply with the requirements of the IAD. Specifically, the Defendant alleged as follows:

> The [D]efendant, Dallas Tomes, Jr.[,] has started the process of the Interstate Compact of Detainers. Th[is] case is pending and is an untried indictment, [in] which a detainer has been lodged against Dallas Tomes, Jr.[;] according to 40-31-101, Interstate Compact on Detainers[,] Dallas Tomes, Jr. shall be brought to trial within one hundred eighty (180) days after having been delivered to the prosecuting officer and to the Bradley County Criminal Court [in] which he has requested a final disposition to be made on the pending indictment. . . .
>
> Defendant respectfully requests that this case be dismissed, based on this cause.

On May 6, 2022, the trial court held a hearing on the motion to dismiss, during which both the State and the Defendant agreed that the case arose under Article IV of the IAD because the State requested the Defendant be transported to Tennessee for trial. The parties further agreed that dismissal for failure to comply with the IAD's 120-day timeframe in Article IV cases was discretionary. The trial court took the issue under advisement and scheduled an additional hearing for May 23, 2022, the day before the trial was scheduled to begin. At the subsequent hearing on the motion to dismiss, the trial court agreed with the parties that the case arose under Article IV. The trial court then found that, while more than 120 days had passed, the prosecution was timely under the IAD because the Defendant had requested or agreed to multiple continuances, which constituted good cause to toll the statute of limitations. Thus, the trial court denied the motion to dismiss, and the trial began the following day on May 24, 2022.

## B. TRIAL

Hurley Buff, the executive director of the Business Incubator, described the organization as a nonprofit program whose mission was to assist new entrepreneurs in getting their businesses "off the ground." Mr. Buff and four of the business owners with offices in the Business Incubator testified that on January 3, 2020, their offices and businesses were broken into, and some property was damaged and some stolen. Mr. Buff testified that multiple doors and two cameras were damaged, with replacement costs of $300 each for the doors and $150 each for the cameras. Mr. Buff testified that his keys were missing from his desk drawer, and that a regular checkbook and printable business

- 4 -

checks were also missing from his desk. He stated that the cost of replacing these items was $300. Mr. Buff also testified that the tools discovered on his desk and in the Business Incubator did not belong to him or to the building maintenance staff.

Mr. Buff and other witnesses testified that areas in the hallways and offices had been ransacked and left in a state of disarray. They also identified security footage on the night of the burglaries, which showed a masked person wearing gloves and dark clothing, including a hoodie, in the building. The footage also showed the person moving the security cameras. Jeffrey Cocks, owner of Corporate Network Solutions, testified that the windows of his business's 1987 Ford Bronco had been damaged during the burglary; he estimated the cost of replacing the windows to be $3000. Sergy Stoliarchuk, a self-employed financial consultant, testified that various items in his office were taken, including laptops valued between $1500 and $1700, hard drives valued at approximately $250, $500 in cash, a PlayStation 3 gaming system, and five to seven credit cards. Mr. Stoliarchuk further testified that money was withdrawn from his bank account by using bank information obtained from his laptop, and several thousand dollars in unauthorized charges were made on his credit cards. Kyle Elrod, the owner/operator of Kona Ice, testified that his business was in one of the larger bays. At the time of the burglary, the business had four trucks and all its supplies inside the bay. He testified that there was no damage inside the bay, but the money the business kept in each of the trucks was missing, totaling $1000. Nathan Beard, a vending machine business owner, testified that he kept his inventory and supplies at his office. He further testified that a large cart he used in his business, valued between $40 and $50, along with a money tray on top of it, had been taken during the burglary. While the cart was later found in another part of the Business Incubator, between $50 and $100 was missing from the money tray. He further testified that between $300 and $400 worth of his inventory had been taken.

Mr. Buff and the other business owners testified that they did not know the Defendant, had never given him permission to be in their offices/businesses, and had never given him permission to take anything from their offices/businesses. Mr. Cocks also testified that he had never given the Defendant permission to go inside the Bronco or to damage it. Mr. Buff and the other business owners admitted they could not identify the person in the security footage because the person was masked and wearing gloves.

Cleveland State Security Officer Nehemias Santiago Perez testified that he was working the evening of the burglary at the Business Incubator. During his on-foot patrol of the campus, he confirmed that all the doors were locked. While patrolling in a vehicle at approximately 11:00 p.m., he noticed a suspicious silver Audi parked in a visitor's parking space. After he wrote down the plate number of the Audi, he activated the patrol car's lights and observed a tall, light-skinned person wearing dark clothing and a mask,

standing in the bushes near the main entrance. He also stated that he knew the person was male due to the person's body features.

The person went inside the building, and Officer Perez proceeded to investigate by looking through the doors and windows. He observed that Mr. Buff's office door was open, which he stated was suspicious. Officer Perez returned to his patrol car because he was unarmed and moved nearby to continue observing. After about fifteen minutes had passed, the person he had observed earlier sprinted out of the building toward the Audi and drove away in it.

Officer Perez then called 911. Afterwards, he returned to the Business Incubator, where he saw that the doors to multiple offices/businesses had been damaged and opened. He also noticed that many of the first-floor cameras had been relocated, and the second-floor cameras had been removed from the ceiling. He collected the tools found at the scene and turned them over to Cleveland State Police Chief Jennifer Bledsoe, along with the recorded license plate number. Officer Perez testified that the Defendant's height, body shape, and build were consistent with the person he had observed at the Business Incubator on the evening of the burglary, but he could not identify him as the person who committed the offenses.

Chief Bledsoe testified that the pry bar discovered by Officer Perez could have made the damaging marks on the doors and other areas. Chief Bledsoe ran the license plate number and discovered the Audi was registered to the Defendant and an unnamed female. Chief Bledsoe opined that the person depicted in the security footage resembled the Defendant. She stated she did not look up the driver's license photograph for the female to whom the vehicle was also registered because the person depicted in the security footage did not appear to be female.

Chattanooga Police Department Detective Bill Parks testified that he procured and executed a search warrant for the Defendant's apartment at Chief Bledsoe's request. The search warrant authorized law enforcement to search for a list of items that had been stolen from different businesses at Cleveland State. Detective Parks testified that the Defendant, Shannon Harris, and another female, who did not live there, were present at the apartment when law enforcement arrived, and all presented their identifications when requested. Detective Parks also stated that a silver Audi was parked at the apartment. Detective Parks testified that thirteen credit cards belonging to the business owners were recovered during the search of the Defendant. He also identified the items seized during the search of the Defendant's apartment, which included a PlayStation 3 gaming system, an ASUS computer, a Sony computer, a blue folder containing paperwork, and blank checks. Chief Bledsoe testified that all the recovered items were returned to the owners on either January 15 or January 16, 2020.

After the State rested, the Defendant made a motion pursuant to Tennessee Rule of Criminal Procedure 29, which the trial court denied. The trial court then *sua sponte* addressed the Defendant's motion to dismiss related to the IAD. The trial court explained that it had asked the court reporter to retrieve the recording of the Defendant's January 14, 2022 hearing for plea or assignment. During that hearing, defense counsel requested a continuance until March 14, 2022, and the State agreed. The trial court noted this delay totaled 59 days. The trial court again noted that this period of 59 days would have been excluded from Article IV's 120-day timeframe, in addition to the time periods for the motion to dismiss and the timeframe for the continuance from March 14, 2022, to May 2, 2022, to which the Defendant had acquiesced.[6]

Following a hearing in accordance with *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999) regarding whether the Defendant would testify, the Defendant elected not to testify or to present any additional proof. Upon this evidence, the jury convicted the Defendant as charged in counts one, three, five, seven, and nine of burglary; counts four and six of theft of property valued at more than $1000 but less than $2500; and count two of theft of property valued at $1000 or less. The jury found the Defendant not guilty of the charge of vandalism in count ten, and the trial court directed a verdict of not guilty on count eight of theft.

C. SENTENCING

At the Defendant's August 19, 2022 sentencing hearing, the State introduced the presentence report, a victim impact statement, and a Strong R Assessment. In addition, the State, based upon its amended notice of enhancement of sentence, introduced certified judgment packets for each of the following prior offenses:

| Date of Offense | Offense | Date of Conviction | Jurisdiction of Conviction |
|---|---|---|---|
| October 9, 1994 | Possession of 20 or more grams of Cannabis | December 8, 1994 | Nassau County Circuit Court, Florida |
| December 19-22, 1994 | Burglary of a Structure or Conveyance | May 11, 1995 | Nassau County Circuit Court, Florida |
| June 12-13, 2000 | Burglary of a Structure or Conveyance | April 5, 2001 | Nassau County Circuit Court, Florida |

---

[6] The trial court discussed these exempted timeframes at the May 6, 2022 and May 23, 2022 hearings.

| | | | |
|---|---|---|---|
| June 20, 2000 | Burglary of a Dwelling | April 5, 2001 | Nassau County Circuit Court, Florida |
| August 8, 2000 | Armed Robbery | April 5, 2001 | Nassau County Circuit Court, Florida |
| September 11, 2000 | Burglary of a Dwelling | April 5, 2001 | Nassau County Circuit Court, Florida |
| September 22-23, 2000 | Burglary of a Structure or Conveyance | April 5, 2001 | Nassau County Circuit Court, Florida |
| September 22-24, 2000 | Burglary of a Structure or Conveyance | April 5, 2001 | Nassau County Circuit Court, Florida |
| September 24-25, 2000 | Burglary of a Structure or Conveyance | April 5, 2001 | Nassau County Circuit Court, Florida |
| October 23, 2000 | Burglary of a Dwelling | April 5, 2001 | Nassau County Circuit Court, Florida |
| October 26, 2000 | Burglary of a Dwelling | April 5, 2001 | Nassau County Circuit Court, Florida |

Prior to the admission of the judgment packets, the trial court reminded the State that, for purposes of determining whether the Defendant qualified as a career offender, the foreign convictions must be equated to what would be a similar offense under Tennessee law. Specifically, the trial court noted that in Tennessee, burglary of a conveyance is classified as a Class E felony, while burglary of a structure is classified as a Class D felony. The trial court noted that it was uncertain whether the difference was relevant, as the burglary conviction offenses in the Defendant's case were Class D felonies, and the Tennessee statute for career offender status required six prior felony convictions of any class for Class D felonies. The State responded that the judgment packets included the indictments, which indicated each of the Defendant's Florida convictions for burglary of a structure or conveyance had been based upon the burglary of a "building" rather than "cars."

The State then presented each judgment packet for the trial court's review. The Defendant affirmatively agreed with the State that under Tennessee law, his December 8, 1994 conviction for possession of cannabis was a Class E felony and his April 5, 2001 conviction for burglary of a dwelling occurring on October 26, 2000, was a Class C felony. In addition, the Defendant did not object when the State submitted that all five of the Florida convictions of burglary of a structure or conveyance were Class D felonies and that the Florida conviction for armed robbery was a Class B felony under Tennessee law. The trial court determined that the burglary of a structure or conveyance, with an offense date range of September 22-24, 2000, fell within the same time frames as the September 22-23

- 8 -

and September 24-25, 2000 offenses and should not be considered for range determination. However, because the September 22-23 and September 24-25 offenses did not overlap, the trial court considered both of those prior offenses in its range determination. Therefore, the State submitted that the Defendant's prior convictions from Florida were equivalent to one Class B felony, four Class C felonies, four Class D felonies, and one Class E felony. The Defendant did not object.

The trial court determined that there were "[t]en prior enhanceable felonies under what would be Tennessee equivalent law." The trial court then found that the Defendant had prior felony convictions in excess of the six necessary to establish the range qualifying him as a career offender pursuant to Tennessee Code Annotated section 40-35-108.

The State then introduced three other certified prior convictions as a collective exhibit to be considered in the application of sentence enhancement factors. In response, the Defendant requested that the trial court give little weight to his prior convictions from Florida when considering the applicable enhancement factors, as they occurred many years before the offenses in this case.

The parties agreed that a sentence of twelve years' incarceration as a career offender at a service rate of sixty percent was appropriate for each of the Defendant's five convictions of burglary. The State argued for the application of several enhancement factors regarding the Defendant's remaining convictions. Specifically, the State requested the trial court find enhancement factor (1) that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, including a history of drug abuse as evidenced in his presentence report; enhancement factor (8) that the Defendant had failed to comply with the conditions of a sentence involving release into the community; enhancement factor (13) that the Defendant was on parole at the time he committed the instant offenses; and enhancement factor (24) that "the offense involved the theft of property and, as a result of the manner in which the offense was committed, the victim suffered significant damage to other property belonging to the victim or for which the victim was responsible." *See* Tenn. Code Ann. § 40-35-114(1), (8), (13), and (24).

During his allocution, the Defendant stated that he had been employed for the three years following his release from prison in Florida, that he had also been involved in coaching youth sports, and that he had performed some charity work at a local church. He asserted that he had not just "been committing crimes" as the State had argued. He further stated that he had been employed throughout his life, except when he was incarcerated. The Defendant admitted that his offenses were serious.

Following arguments, the trial court reiterated that the only available sentence for each of the Defendant's five convictions of burglary was a sentence of twelve years' incarceration as a career offender at a service rate of sixty percent, with no eligibility for probation. The trial court also found he was not eligible for drug court or community corrections. The trial court noted the seriousness of the case and found the Defendant to be a professional criminal. The trial court noted various factors that demonstrated the defendant's planning and intent to avoid detection. The trial court noted the "mountain of criminal history" contained in the presentence report, which was supported by the judgment packets submitted by the State. The trial court then noted it had also considered the validated risk and needs assessment, as well as the Defendant's allocution. The trial court considered that the Defendant was brought to Tennessee for trial from another jurisdiction where he was incarcerated. The trial court noted that there was "not much there as far as a history of good citizenship and compliance." The trial court considered the statistical information but gave it no weight. The trial court found enhancement factors (1) and (13) applicable but found no applicable mitigating factors. The trial court noted the lack of work history in the presentence report.

The trial court also found that the Defendant was a professional criminal who had knowingly devoted his life to criminal acts as a major source of livelihood and that the Defendant was an offender whose record of criminal activity was vast and extensive. *See* Tenn. Code Ann. § 40-35-115 (b)(1)-(2). Accordingly, the trial court imposed partial consecutive sentencing, with counts one, three, and five for burglary to be consecutive to each other. The remaining burglary offenses in counts seven and nine were to be served concurrently with count five. The trial court imposed the minimum probated sentences for the theft convictions in counts two, four, and six to be served concurrently with each other and with the other sentences. Accordingly, the trial court imposed an effective sentence of thirty-six years' incarceration at a sixty percent service rate.

## D. Motion For A New Trial

The Defendant filed a timely motion for a new trial. As relevant to this appeal, the Defendant claimed (1) that his judgments were untimely entered pursuant to the IAD; (2) that he was renewing his pretrial motion to dismiss pursuant to the IAD; (3) that a "crowded docket" was not a necessary and reasonable basis for a trial beyond the 180-day limit pursuant to the IAD; and (4) that an *ex parte* continuance did not qualify as a basis to toll the 120-day time limit pursuant to the IAD. The State filed a response opposing each of the issues raised by the Defendant. The trial court held a hearing on the motion for a new trial on December 8, 2023.

At the hearing, the Defendant advised the trial court he was relying upon his written motion for a new trial and stated, "It's . . . essentially the second time this motion's been

heard. It is primarily that [the] interstate compact that was litigated pretrial and that is our biggest issue." When the trial court inquired about what the Defendant was arguing more specifically, counsel stated as follows:

> [O]ur contention would be that [the applicable IAD standard] was the 120-day standard. I understand there's been some question about the 120 versus 180 days, but our -- outside of what is already contained within our motion our other argument would be that in order for there to be a continuance there had to have been a trial date set at that time and since there was no trial date set you cannot continue something which does not exist. And so any time that was tolled prior to the trial date being set cannot be held against [the Defendant] because he could not have agreed to a continuance of something that did not exist at that time.

The Defendant specifically stated the 120-day limit under Article IV of the IAD applied to his case. The State then argued in opposition to the Defendant's motion. The Defendant testified that he had initiated the proceedings under the IAD, not the State. The trial court then addressed counsel and stated that even if the court credited the Defendant's testimony, it would not change the result of the ruling on the motion to dismiss, as the trial commenced within the 180-day time limit contained in Article III of the IAD. The Defendant then stated he thought both time limits applied under the IAD. The trial court explained to the Defendant that it believed the Defendant was "conflating" the articles of the IAD and was confused about how they applied. The State declined to cross-examine the Defendant, and no additional proof was presented at the hearing. The trial court denied the motion for a new trial. This timely appeal followed.

## II.    ANALYSIS

On appeal, the Defendant challenges the trial court's denial of his motion to dismiss his charges pursuant to the IAD and its classification of him as a career offender, arguing that the trial court failed to conduct a foreign judgments test during sentencing. We will address these issues in turn.

### A. INTERSTATE AGREEMENT ON DETAINERS

The Defendant argues the trial court erred by analyzing his motion to dismiss his charges pursuant to Article IV of the IAD, rather than under Article III. The Defendant asserts that he is entitled to reversal of his convictions and dismissal of the charges because the State failed to demonstrate that he was brought to trial within the applicable 180-day time limit in Article III; alternatively, he argues that he is entitled to a new IAD hearing. In addition, the Defendant claims he is entitled to relief under plain error review. The State

argues that the trial court did not err in denying the Defendant's motion to dismiss and that the Defendant is not entitled to plain error relief.

The IAD provides two possible deadlines for the commencement of a trial on pending indictments against a defendant currently incarcerated in another state. Tenn. Code Ann. § 40-31-101. Pursuant to Article III of the statute, if the defendant requests his or her extradition and disposition of pending charges, the State has 180 days in which to commence trial from the date that the State and the trial court are served with IAD disposition forms. *Id.* at Art. III(a). On the other hand, if the State requests extradition and disposition of pending charges, Article IV applies, and the State has 120 days to commence trial from the date that the defendant enters the State. *Id.* at Art. IV(a).

The Defendant argues that the standard of review for interpreting the language of the IAD involves statutory construction, which is a question of law that is reviewed *de novo* with no presumption of correctness. *See State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013). The Defendant further asserts that the State bears the burden of demonstrating compliance with the applicable time limit under the IAD. *See State v. Lock*, 839 S.W.2d 436, 444-45 (Tenn. Crim. App. 1992) ("[T]he burden is on the [S]tate to show compliance with the [IAD's] time requirements, including a showing that the requirements were not met because the defendant was unable to stand trial."). The Defendant asserts that the record is clear that he, rather than the State, requested final disposition of his indictments under the IAD and that his motion to dismiss was also based upon Article III.

The State argues that the Defendant's issue must be considered under plain error review because he changed his position on the issue post-trial. Despite making the arguments noted above concerning the applicable standard of review, the Defendant does not dispute that he agreed at the May 2, 2022 hearing on his motion to dismiss that Article IV, rather than Article III, applied. The Defendant maintains he is entitled to relief under plain error review.

"'[A] party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason' on appeal." *State v. Hardison*, 680 S.W.3d 282, 309 (Tenn. Crim. App. 2023) (quoting *State v. Dobbins*, 754 S.W.2d 637, 641 (Tenn. Crim. App. 1988)). As noted above, the Defendant agreed during the hearing on his pretrial motion to dismiss that Article IV applied. Also, as noted above, the Defendant maintained this position at his hearing on his motion for a new trial when he again relied upon Article IV's 120-day limit. While the Defendant testified at the motion for new trial that he initiated the proceedings under the IAD, the trial court held that even if that was true, it would not change the result of the ruling on the motion to dismiss, as the trial commenced within the 180-day time limit

- 12 -

contained in Article III of the IAD. The Defendant then made an additional statement that both time limits applied under the IAD, and the trial court disagreed.

The Defendant's written motion for a new trial and oral argument contained no arguments that the trial court's specific application of the IAD was improper. Rather, the Defendant's motion and arguments focused on whether a continuance without a trial date could toll the 120-day time limit of Article IV and whether the timing of the judgments in the instant case violated the IAD. Clearly, the Defendant takes a different position on appeal, arguing that Article III should apply rather than Article IV. Recognizing his change in position on appeal, the Defendant argues that he is entitled to relief under plain error review. The State argues that the Defendant has not established plain error and, thus, is not entitled to any relief. We agree with the State.

A defendant may only receive relief under plain error review if he or she proves all five of the following prerequisites:

> (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been violated; (4) the accused must not have waived the issue for tactical reasons; and (5) consideration of the error is necessary to achieve substantial justice.

*State v. Rimmer*, 623 S.W.3d 235, 255-56 (Tenn. 2021) (citing *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016)). If a defendant fails to prove any one of the five plain error factors, then he or she is not entitled to plain error relief, and the appellate court is not required to analyze the remaining factors. *State v. Bledsoe*, 226 S.W.3d 349, 358 (Tenn. 2007). To qualify as plain error, "[t]he magnitude of the error must have been so significant that it probably changed the outcome of the trial." *Id*. at 354 (quoting *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994) (internal quotation marks omitted)); *see also* Tenn. R. App. P. 36(b).

We conclude that the Defendant is not entitled to plain error relief because he cannot establish the violation of a substantial right. *See Rimmer*, 623 S.W.3d at 255-56. Assuming for the sake of review that Article III applies, as now claimed by the Defendant, the 180-day timeline begins upon notice to both the State and the trial court that the Defendant has initiated an IAD proceeding by requesting disposition of pending charges. Tenn. Code Ann. § 40-31-101, art. III(a). While the record does not include copies of the requisite notice forms, it nevertheless includes the "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer," which stated that the Bradley County District Attorney General's Office received the requisite notice on November 24, 2021. The trial court signed the document on December 10, 2021.

- 13 -

The record does not reflect whether the trial court received notice on the same date as the State. However, since notice to both the State and the trial court is required, the earliest possible date for this to occur was November 24, 2021. The Defendant's trial began on May 24, 2022, 181 days after the State received notice of the Defendant's initiation of IAD proceedings.

Although Article III provides that the defendant "shall be brought to trial" 180 days after written notice of his or her initiation of IAD proceedings, the IAD also provides that

[i]n determining the duration and expiration of the time periods provided in articles III and IV of this agreement, the running of such time periods shall be tolled whenever and for as long as the prisoner is unable to stand trial, as determined by the court having jurisdiction on the matter.

Tenn. Code Ann. § 40-31-101, art. VI. As the Tennessee Supreme Court has held, a defendant proceeding under the IAD is "unable to stand trial during 'periods of delay occasioned by the defendant.'" *Dillon v. State*, 844 S.W.2d 139, 142 (Tenn. 1992) (first citing *United States v. Nesbitt*, 852 F.2d 1502, 1516 (7th Cir. 1988); then citing *United States v. Roy*, 771 F.2d 54, 59 (2d Cir. 1985); and then citing *State v. Bernson*, 106 Or. App. 252, 255-56 (1991)). Such periods of delay "include time consumed by consideration of [a] defendant's pretrial motions." *Dillon*, 844 S.W2d at 142 (citing *Nesbitt*, 852 F.2d at 1516).

In this case, the Defendant filed a motion to dismiss his charges on May 2, 2022. The trial court heard the motion on May 6, 2022, took it under advisement, and denied it on May 23, 2022. This created a 21-day period, which is exempt from either the 120-day time limit in Article IV or the 180-day time limit in Article III, because it is a period during which the Defendant was unable to stand trial due to the pending motion. *See Dillon*, 844 S.W.2d at 142-43. Without consideration of any other periods of delay addressed by the trial court, the exclusion of this 21-day period from the 181-day period from notice to the State of initiation of proceedings to trial means that the Defendant went to trial well within the 180-day time limit set forth by Article III. Accordingly, the Defendant is not entitled to plain error relief on his IAD claim.

B. SENTENCING

The Defendant next argues that the trial court erred in failing to conduct a foreign judgments test to determine whether his prior convictions in Florida qualified as Tennessee felonies for the purpose of sentencing him as a career offender. *See* Tenn. Code Ann. § 40-35-108. Additionally, the Defendant claims he is entitled to plain error relief on this issue. The State responds that the Defendant conceded in the trial court that several of his

convictions were felonies, did not object to his classification as a career offender, and specifically agreed that a twelve-year sentence as a career offender at a sixty percent service rate was appropriate for each of his burglary convictions. The State further argues that the Defendant cannot demonstrate that he is entitled to plain error relief.

Following our supreme court's decision in *State v. Bise*, the standard of review for a sentencing range issue is abuse of discretion. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also, e.g., State v. Garrens*, No. W2024-00258-CCA-R3-CD, 2025 WL 1307696, at *6 (Tenn. Crim. App. May 6, 2025), *no perm. app. filed*; *State v. Brewer*, No. W2014-01347-CCA-R3-CD, 2015 WL 4060103, at *7 (Tenn. Crim. App. Jun. 1, 2015), *no perm. app. filed*; *State v. Christian*, No. M2018-00320-CCA-R3-CD, 2019 WL 3948933, at *5 (Tenn. Crim. App. Aug. 21, 2019), *no perm. app. filed*; *State v. Hughes*, No. M2015-01688-CCA-R3-CD, No. M2015-01207-CCA-R3-CD, 2016 WL 6956804, at *3-4 (Tenn. Crim. App. Nov. 29, 2016), *perm. app. denied* (Tenn. Feb. 16, 2017); *State v. Thomas*, No. W2015-00157-CCA-R3-CD. 2016 WL 692541, at *5-6 (Tenn. Crim. App. Feb. 22, 2016), *perm. app. denied* (Tenn. Jun. 23, 2016); *but see State v. Anderson*, No. E2024-01131-CCA-R3-CD, 2025 WL 2433781, at *3 (Tenn. Crim. App. Aug. 25, 2025) (citing pre-*Bise* decisions and applying *de novo* review), *perm. app. filed* (Tenn. Oct. 26, 2025).[7] Under this standard of review, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. Where the record supports the trial court's sentencing determination and that determination reflects that the trial court properly applied the purposes and principles of sentencing, the trial court's decision is reviewed for an abuse of discretion, with a presumption of reasonableness. *Id*. at 707.

Our statutes provide for sentencing classification by range, and our career offender classification statute provides in pertinent part as follows:

(a) A career offender is a defendant who has received:

. . . .

---

[7] We note that the parties do not dispute the appropriate standard of review to be applied in the Defendant's sentencing challenge, to wit: abuse of discretion under *Bise*. Likewise, the parties in *Anderson* did not dispute the appropriate standard of review; however, they agreed with our learned colleague's concurring opinion in this case, to wit: *de novo* review. We agree with the concurring opinion that the inconsistent results on this issue would benefit from review by the Tennessee Supreme Court. In any event, we would find that the trial court's sentencing determination in this case was appropriate under either standard of review, based upon the findings outlined below.

- 15 -

(3) At least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony.

(b) In determining the number of prior convictions a defendant has received:

(1) "Prior conviction" means a conviction for an offense occurring prior to the commission of the offense for which the defendant is being sentenced;

. . . .

(5) "Prior convictions" includes convictions under the laws of any other state, government or country that, if committed in this state, would have constituted an offense cognizable by the laws of this state. In the event that a felony from a jurisdiction other than Tennessee is not a named felony in this state, the elements of the offense shall be used by the Tennessee court to determine what classification the offense is given.

(c) A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III.

Tenn. Code Ann. § 40-35-108(a)-(c). "[I]t is the State's burden to prove beyond a reasonable doubt that the defendant has the requisite number of prior felonies to establish the sentencing range." *State v. Vick*, 242 S.W.3d 792, 796 (Tenn. Crim. App. 2007).

In *State v. Little*, this court set forth the process for evaluating foreign judgments for range enhancement as follows:

The foreign conviction analysis involves three parts. First, a trial court must determine whether the foreign conviction was a "cognizable" offense under Tennessee law. *See* T[enn]. C[ode] A[nn]. §§ 40-35-106(b)(5), -107(b)(5), -108(b)(5). Second, a trial court must determine whether the foreign conviction was a "named felony" in Tennessee. To qualify as a "named felony," a foreign felony conviction must have the exact same name as a crime that is currently a felony in Tennessee. T[enn]. C[ode] A[nn]. § 40-35-106(b)(5). Finally, if the foreign felony is not a named felony in Tennessee, a trial court is required to then analyze the elements of the foreign felony at the time of the defendant's conviction, to determine whether it "was analogous to a felony offense under Tennessee's law as it existed at the time

- 16 -

[the offense] was committed." *Vick*, 242 S.W.3d at 79[4] (citing *State v. Brooks*, 968 S.W.2d 312, 313-14 (Tenn. Crim. App. 1997)). The length of sentence a defendant receives for an out-of-state conviction "is not determinative of what grade of felony the out-of-state offense might be assigned under Tennessee laws." *Id.* at 794.

No. M2022-00738-CCA-R3-CD, 2023 WL 4930073, at *3 (Tenn. Crim. App. Aug. 2, 2023), *no perm. app. filed*. "In proving that a defendant has prior foreign convictions for range enhancement, the State may . . . introduce certified copies of the prior convictions at the sentencing hearing." *Garrens*, 2025 WL 1307696, at *7 (citing Tenn. Code Ann. § 40-35-202(a)). The State may also meet its burden of proving a defendant's prior foreign convictions "when a defendant agrees or stipulates that he or she may be sentenced in an enhanced range." *Id*. at *7. Moreover, "where the parties agree to some aspects of sentencing, the trial court is not required to hold a hearing on those issues." *Id.*

Here, the State submitted judgment packets of eleven prior Florida convictions for the trial court to consider in determining the Defendant's range classification. The trial court eliminated one of the eleven from consideration because its dates overlapped with those of two other convictions. The Defendant specifically agreed that his Florida convictions for burglary of a dwelling qualified as Class C felonies in Tennessee, and that his conviction for possession of cannabis qualified as a Class E felony in Tennessee. Accordingly, the Defendant affirmatively agreed that five of the eleven Florida offenses were felonies in Tennessee. The State presented that the offense underlying the Defendant's conviction of armed robbery was committed by use of a handgun, and the trial court found that this offense was "the equivalent under Tennessee law of a [Class] B felony [of] aggravated robbery," and the Defendant did not object. When addressing the remaining Florida convictions for burglary of a structure or conveyance, the trial court noted that it had "to equate what would be similar under Tennessee law" and noted that "[b]urglary of a structure here would be a [Class] D [felony], [and] burglary of a conveyance is an auto burglary, [a Class] E [felony]." The trial court then found that the current offenses were Class D burglaries. Classifying the Florida convictions as either a Class D or a Class E felony would qualify the prior convictions for consideration of range classification under the statute. The trial court then determined the judgment packets demonstrated these four Florida convictions were burglaries of structures and qualified under Tennessee law as Class D felonies. Accordingly, the trial court summarized that the Defendant had ten prior qualifying felony convictions for consideration in determining the range of sentence, exceeding the six necessary to qualify as a career offender. The trial court then found the Defendant to be a career offender beyond a reasonable doubt. In fact, as asserted by the State, the Defendant affirmatively agreed at the sentencing hearing that the only possible sentence for his Class D burglary convictions was a twelve-year sentence at sixty percent service as a career offender. The only sentencing issue challenged in the

- 17 -

motion for a new trial was the application of consecutive sentencing, and that issue is not raised here. Accordingly, this issue is waived on appeal. *See id.*

Despite having affirmatively agreed to his range classification as a career offender, the Defendant requests that this court review his range classification for plain error, asserting that the trial court failed to properly conduct a foreign judgments test. However, plain error is inappropriate in this case because the Defendant has failed to show the breach of a clear and unequivocal rule of law. *See Rimmer*, 623 S.W.3d at 255-56. While the Defendant argues the trial court failed to fulfill its statutory obligation to perform a foreign judgments test on each of the Florida convictions relied upon in his classification as a career offender, the Defendant completely misses the effect his own agreements and concessions had on the trial court's obligations. *See Garrens*, 2025 WL 1307696, at *9. He now argues that the trial court erred in failing to properly conduct a foreign judgments test for these five offenses. However, the Defendant affirmatively agreed at the sentencing hearing that his appropriate sentence for his Class D burglary offenses was twelve years at a sixty percent rate of service. The Defendant's concessions made any further hearing on the issue unnecessary. In any event, the State presented the trial court with certified copies of judgment packets for each offense, which the court considered in determining whether the offenses equated to felony offenses in Tennessee. The trial court specifically reviewed and determined the equivalent conviction in Tennessee for the foreign judgments introduced in sentencing. Accordingly, the Defendant is not entitled to plain error relief on this claim.

## III. CONCLUSION

Following our review of the record and based upon the foregoing analysis, we affirm the judgments of the trial court.

s/ *STEVEN W. SWORD*
_____
STEVEN W. SWORD, JUDGE